William G. FOX et al., Plaintiffs,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 74–0446–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 7, 1976.

Andrew W. Wood, Woodward, Wood & Street, C. Jeffers Schmidt, Jr., Richmond, Va., for plaintiffs.

Julie Dubick, Asst. U. S. Atty., Charles L. Beard, Asst. U. S. Atty., Dept. of Justice, Washington, D. C., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, Deputy United States Marshals for the Eastern District of Virginia, bring this action under the Tucker Act, 28 U.S.C. § 1346(a)(2) to recover overtime compensation allegedly due them under 5 U.S.C. § 5542. The action is brought pursuant to Rule 23, Fed.R.Civ.P. on behalf of all persons who are now or have been Deputy United States Marshals for the Eastern District of Virginia for the six years immediately preceding October 21, 1974. Jurisdiction is attained pursuant to 28 U.S.C. § 1346(a)(2). The Court has taken evidence, considered the arguments of counsel and renders its findings of fact and conclusions of law, on the issue of liability as follows:

The factual background of the instant controversy is that, each federal judicial district is assigned a United States Marshal, appointed by the President of the United States. In turn, the marshal has deputies who, under his direction and supervision, carry out the duties imposed upon the office. The deputies in the Eastern District of Virginia, numbering approximately 35, are assigned to either the Norfolk, Richmond or Alexandria Divisions. See generally 28 U.S.C. § 561 et seq.

Deputy marshals are entitled to compensation pursuant to the provisions of the Federal Employees Pay Act, 5 U.S.C. § 5541 et seq., and regulations promulgated thereunder. Since January 1, 1975, plaintiffs are covered by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. By virtue of the limitations contained in 29 U.S.C. § 207(k), the FSLA has little bearing on the issues raised in the instant case.[1]

A regular workweek for a Deputy U.S. Marshal consists of five eight-hour workdays, Monday through Friday. A workday is scheduled to commence at 8:30 a. m. and end at 5:00 p. m., with a half hour lunch break. In actuality, a deputy will work a substantial amount of overtime. The typical deputy in this district works approximately 650 hours of overtime per year, for an average of 12.5 overtime hours each week.

The Federal Employees Pay Act provides two distinct forms of compensation for overtime. Hours of work in excess of the 40 hour administrative workweek which have been "officially ordered or approved" must be compensated at an hourly rate equal to one and one-half times the employee's basic hourly compensation. 5 U.S.C. § 5542 (formerly 5 U.S.C. § 911).[2] In the

---

[1]. The parties have stipulated that plaintiffs may be entitled to additional compensation under 29 U.S.C. § 207(k) and the United States has agreed to make such payments as are necessary.

[2]. 5 U.S.C. § 5542 provides in pertinent part:
(a) For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an admin-

istrative workweek, or (with the exception of an employee engaged in professional or technical engineering or scientific activities for whom the first 40 hours of duty in an administrative workweek is the basic workweek and an employee whose basic pay exceeds the minimum rate for GS–10 for whom the first 40 hours of duty in an administrative workweek is the basic workweek) in excess of 8 hours in a day,

case of hours of duty which exceed the basic workweek, but which cannot be controlled administratively, compensation is determined by a designated percentage of the employee's basic annual pay. 5 U.S.C. § 5545(c)(2) (formerly 5 U.S.C. § 926).[3] This latter form of compensation is designated "administratively uncontrollable overtime pay" (AUO). The instant controversy centers on the fact that the Deputy U.S. Marshals are receiving AUO compensation for overtime for which they allege entitlement at a rate of time and one-half.

Plaintiffs' duties as Deputy U.S. Marshals involve six basic functions. Writs, summons and other papers are assigned to deputies who are ordered to serve such documents promptly. The execution of this function often involves overtime. The evidence discloses that external forces, such as the return date on a subpoena or the difficulties in locating the person to be served, have some impact on whether or not a deputy can perform this particular duty during regular working hours. Of far greater significance, however, is the demand placed upon the limited personnel resources by the other functions of the position. The performance of other duties makes it virtually impossible for a deputy to serve papers during regular work hours. Consequently, papers are generally served

after 5:30 p.m. during the week, or, failing that, they are served on the weekends. The situation is most acute in the Alexandria Division where, due to the location of federal installations, a greater number of warrants must be processed. For example, as of July 18, 1975, there existed a backlog of 85,000 traffic warrants in that division. The evidence disclosed that in some districts such as New York City and Washington, D.C., the U.S. Marshals' offices significantly reduced their overtime requirements by serving papers through the utilization of "warrant squads." The lack of a sufficient number of deputies within the Eastern District of Virginia precludes the implementation of such a program. Thus, insofar as the service of required documents is concerned, it is the inadequate number of personnel rather than the nature of the work which accounts for the significant amount of overtime involved therein. The evidence indicates, and the Court concludes, that the demands of the function are constant. That is, the need to serve court papers is both predictable and uniform rather than occasional or sporadic.

The second aspect of a Deputy U.S. Marshal's responsibilities involves morning prisoner pickup for production in court. The U.S. Marshal for this district, the chief supervisor of the plaintiffs, has, quite appro-

---

performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:

(1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium paid.

(2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10, and all that amount is premium paid.

**3.** 5 U.S.C. § 5545(c)(2) provides in pertinent part:

(c) The head of an agency, with the approval of the Civil Service Commission, may provide that

—. . .

(2) an employee in a position in which the hours of duty cannot be controlled adminis-

tratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 per centum nor more than 25 per centum, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position.

A great majority of the plaintiffs are entitled to 25% AUO due to the large number of overtime hours they put in.

priately, directed that prisoners must be in the courthouse in each division by no later than 8:30 a. m. Security interest mandates the use of approximately four deputies in this regard. The 8:30 a. m. directive necessitates that these deputies report for work prior to the time their regular shift is scheduled. In the Richmond Division, for example, deputies must begin work at approximately 6:30 a. m. in order to timely produce prisoners incarcerated in the Petersburg Reformatory. The workday begins at approximately 7:15 a. m. in those instances when prisoners are scheduled to be picked up from facilities located closer to the courthouse. A deputy assigned to prisoner pickup is expected to complete the normal workday. Hence, in those instances, overtime is compelled by the nature of the job.

While it is certain that prisoner pickup will involve overtime, it is not equally predictable when this duty will be required. While there is evidence that prisoner pickup is a frequent occurrence, there is insufficient evidence for the Court to conclude that prisoner pickup is a daily demand. Whether this assignment is in fact required, depends on the schedule of the court. There is similar unpredictability concerning the time required to complete a prisoner pickup assignment. As heretofore noted, the time needed to pickup prisoners is dependent on the proximity of the place of incarceration to the courthouse. The precise date and time when prisoners will be required to appear in court are largely determined by the court's schedule. These, as well as the location of prison facilities, are factors over which the defendants have no control.

A correlative function is the return of prisoners at the end of the day. The degree to which overtime is occasioned by the performance of this duty is dependent entirely upon the schedule of the court. Deputies are also assigned to courtroom duty. This involves maintaining security during court proceedings. Ordinarily two deputies are expected to be in attendance in the courtroom while the court is in session unless the proceedings involve an incarcerated defendant whereupon an additional deputy is assigned. Overtime is involved in the performance of courtroom duties only when the court proceedings commence before 8:30 a.m., continue after 5 p.m. or, as is not infrequent, are held on the weekend.

Prisoner coordination trips and short hauls lie within the scope of a deputy's responsibility. Prisoner coordination trips involve transporting prisoners from one district to another. These often require more than one day to complete. Short hauls are described as one day or intradistrict trips involving the transportation of prisoners. Prisoner coordination trips, in the past, were scheduled during the normal workweek. Presently, this duty is confined to weekend work and therefore necessitates overtime. The weekend scheduling does not result from the nature of the job but from a shortage of manpower. It is uncontradicted that such trips could be made during the regular workweek, and hence reduce overtime, if there were a sufficient number of personnel to carry out the full perimeter of duties required of the marshals' service.

The final general category of labor is special assignment. Such consist of special duty assignments covering an extended period of time. An example of a special assignment is the guarding of a government witness. Such assignments commonly involve 12-hour shifts. During the week, deputies are compensated for 8 hours at regular pay and for 4 hours at time and one-half. Weekend special assignments are paid at time and one-half for the first 12 hours. Any work in excess of 12 hours is designated as AUO.

Overtime work performed with the knowledge and inducement of supervisory personnel is deemed to be "officially ordered or approved." The law will treat as issued those orders that ought to have been issued. *Anderson v. United States,* 201 Ct.Cl. 660 (1973); *Byrnes v. United States,* 330 F.2d 986, 163 Ct.Cl. 167 (1963); *Aviles v. United States,* 151 Ct.Cl. 1 (1960). The Court has no difficulty in concluding

that the overtime involved in this action was officially ordered or approved in such manner. Whether the overtime is subject to time and one-half provisions of 5 U.S.C. § 5542 or the AUO provisions of 5 U.S.C. § 5545(c)(2) depends on whether it was administratively controllable or not.

█ The two means of compensation are mutually exclusive. *Burich v. United States,* 366 F.2d 984, 987, 177 Ct.Cl. 139 (1966). *Fix v. United States,* 368 F.2d 609, 177 Ct.Cl. 369 (1966). AUO was developed for the purpose of providing compensation for those government employees "whose hours of duty cannot be controlled administratively and who are required to perform substantial amounts of irregular overtime . . ." S.Rep. No. 1992, 83d Cong., 2d Sess. (1954). 1954 U.S.Code Cong. & Admin.News, pp. 3816, 3824 (1954). Criminal investigators are illustrative of those employees for whom AUO is appropriate. *See, e. g., McQuown v. United States,* 199 Ct.Cl. 858 (1972); *Fix v. United States,* 368 F.2d 609, 177 Ct.Cl. 369 (1966); *Byrnes v. United States,* 330 F.2d 986, 163 Ct.Cl. 167 (1964). The very nature of an investigator's responsibilities, involving surveillance and the like, renders it impossible to control hours administratively in the usual fashion. *See* Report of the Civil Service Commission to the United States Senate, 1954 U.S.Code Cong. & Admin.News, pp. 3829, 3834 (1954).

█ In conformity with the Civil Service Commission's regulations on the subject, the Department of Justice established criteria by which administrative controllability is to be determined. The factors pertinent to this litigation are as follows:

> "The position must be one in which the hours of duty cannot be controlled administratively, *e. g.,* by hiring additional personnel rescheduling of the hours of duty,

or granting compensatory time to offset overtime hours required."

United States Department of Justice Order No. 1551.4, Paragraph 5(a), April 14, 1975. Compare 5 C.F.R. § 150.153(a) (1975).[4] The determination that plaintiffs are entitled to AUO as opposed to time and one-half must be upheld unless (a) it clearly contradicts the terms or purpose of the statute or (b) clearly contradicts the implementing regulations promulgated by the Civil Service Commission. *See Fix v. United States,* 368 F.2d 609, 614, 177 Ct.Cl. 369 (1966); *Rogers v. Laird,* 319 F.Supp. 1, 4 (E.D.Va.1970). *Cf. Camp v. Pitts,* 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1972); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

█ The Court is satisfied from the evidence adduced at trial when viewed through the appropriate framework as heretofore referred to, that the overtime occasioned by the serving of papers and prisoner coordination trips could unquestionably be controlled through the hiring of additional personnel. A shortage of manpower rather than anything intrinsic to the performance of these functions accounts for the overtime. In light of the fact that hiring additional deputies would eliminate or reduce the overtime resulting from these functions, such overtime is administratively controllable by the very terms of the relevant regulations. The Court concludes that it is clearly erroneous to apply AUO under these circumstances. It follows, therefore, that the plaintiffs are entitled to compensation under 5 U.S.C. § 5542 for this portion of the overtime they have encountered.[5]

The Court is fully cognizant of the result reached by the Court of Claims in the case of *Burich v. United States,* 366 F.2d 984, 177 Ct.Cl. 139 (1966). It is to be noted, however, that in that case the court was

---

4. This Department of Justice Order is the most recent one relating to AUO and is consistent with earlier orders in effect during the time period involved in this dispute.

5. This holding does not, of course, mandate the hiring of additional personnel. The Court merely holds that, under the evidence presented in this case, these hours are administratively

controllable as that term is defined by the Civil Service Commission and the Department of Justice. Where, as here, the overtime is officially ordered or approved and AUO is inappropriate, plaintiffs are entitled to time and one-half. *Cf. Rapp v. United States,* 340 F.2d 635, 167 Ct.Cl. 852 (1964).

ruling on cross-motions for summary judgment under circumstances where there were no contested issues of fact. *Burich v. United States,* 366 F.2d at 985–86. The court's conclusion in that case was based on a record significantly different from the instant one. Indeed, the plaintiff in *Burich* did not contend that his overtime was amenable to administrative control. His contentions were that his assignments were "regularly scheduled." *Burich v. United States,* 366 F.2d at 989. Plaintiffs in the instant case have not only alleged that the overtime is administratively controllable, but have met their burden in proving it with regard to the overtime resulting from serving papers and prisoner coordination trips.

On the other hand, the plaintiffs have failed to meet their burden insofar as the remaining functions are concerned. Additional personnel alone would not affect the amount of overtime incurred by courtroom duty, special assignment or prisoner pickup and return. An expert witness, testifying on behalf of the plaintiffs, asserted that an increase in personnel coupled with shift scheduling could reduce or control the amount of overtime. His conclusion was based on two facts. First, the records he examined reflected an extraordinary consistency in the total number of hours each deputy worked over a six year period. Second, a breakdown of the deputy's daily log sheets suggested that each deputy performed each of the required functions heretofore described. Thus, the witness concluded an early shift could perform the early morning duties (*e. g.* prisoner pickup), while the late shift would be available for the later responsibilities (*e. g.* prisoner return and courtroom duty). The Court, however, is not satisfied that such an analysis is appropriate to the instant case.

On cross-examination, the witness admitted that his analysis would compel the identical conclusion of controllability should a group of criminal investigators compile significant and consistent amounts of overtime during the course of their employment. This conclusion, in turn, would indicate the inapplicability of AUO to the criminal investigators. Congress, however, held a contrary opinion in drafting the legislation. See 1954 U.S.Code Cong. & Admin.News, pp. 3816, 3824 (1954).

Several factors must be considered in determining whether the overtime is controllable through the rescheduling of hours. The degree to which it can be predicted that certain work would be required and when such need will arise is, of course, the first consideration. Secondly, it is important to ascertain whether the time required to perform the task can be reasonably determined beforehand. *Cf. Burich v. United States,* 366 F.2d at 988. Without predictability as to these factors, shift scheduling might well result in deputies reporting to work at times when there are little or no duties to perform.

The evidence fails to establish sufficient regularity or predictability in the occurrence of overtime stemming from courtroom duty or prisoner return. There is a similar inability to predetermine the length of such overtime when it does in fact occur. The scheduling of the court, the controlling factor in this regard, is too inconsistent to provide a basis for rational planning in the context with which we here deal. Moreover, the overtime incurred by special assignments is compensated by time and one-half pay to the extent it can be anticipated. With regard to all of these duties, deputies are "not assigned [to] overtime; [they are] assigned a task which *might* require overtime. Under such circumstances, [their] additional duty hours [represent] administratively uncontrollable overtime rather than regularly scheduled overtime." *Burich v. United States,* 366 F.2d at 988. (Emphasis in the original).

Prisoner pickup presents the most difficult determinations. When this task is assigned, it is certain to require overtime. In this sense, the deputies are similarly situated to the claimants in those cases where pre-shift activities have been deemed compensable by time and one-half. *See, e. g., Baylor v. United States,* 198 Ct.Cl. 331 (1972); *Detling v. United States,* 432 F.2d

462, 193 Ct.Cl. 125 (1970); *Moss v. United States,* 173 Ct.Cl. 1169, 353 F.2d 746 (1965); *Rapp v. United States,* 340 F.2d 635, 167 Ct.Cl. 852 (1965). Those cases, unlike the instant case, involved work which was predictable in terms of when it would occur and how long it would last. In short, the overtime in those cases was administratively controllable. Plaintiffs herein, however, have not demonstrated the same with regard to prisoner pickup duty. The Court therefore concludes that the defendant's determination that overtime occasioned by prisoner pickup duty is compensable by AUO is not arbitrary or so unreasonable as to constitute an abuse of discretion.

An appropriate order will issue.