Robert A. BUCHAN, et al., Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

No. 92–505 C.

United States Court of Federal Claims.

March 30, 1995 *.

Ed Bethune, Searcy, AR, for plaintiffs.

Anthony J. Ciccone, U.S. Dept. of Justice, Washington, DC, for defendant.

* This Opinion and Order was filed unpublished on March 30, 1995. Thereafter, defendant filed a request for Publication pursuant to Rule 52.1(b).

## OPINION AND ORDER

HODGES, Judge.

Our decision on the parties' cross motions for summary judgment left a single issue of material fact whether FBI headquarters reasonably could have scheduled twelve-hour shifts during the week of November 29 to December 6, 1987. *Buchan v. United States*, 31 Fed.Cl. 496 (1994). Trial on that issue showed that headquarters did not have enough information to schedule such shifts and thus its decision not to grant regularly scheduled overtime pay was reasonable. Therefore, we must rule for defendant.

### FACTS

On Monday, November 23, 1987, approximately 1400 Cuban detainees of the Mariel boat lift began to riot at the federal prison in Atlanta and took civilian hostages. FBI Special Agent in Charge Kennedy requested that FBI Headquarters assign all available agents to assist in quelling the prison riot. Headquarters granted this request, and agents began arriving within a few hours. Plaintiffs are members of the Chicago Special Weapons and Tactical (SWAT) team; they arrived that night, shortly after midnight.

Plaintiffs were required to spend extensive time at assigned duty stations. The event was stabilized by Thursday morning but Special Agent Kennedy realized that the riot was not going to end in the immediate future. To facilitate the smooth operation of the SWAT teams, Kennedy split the agents into an "A.M. Shift," which was assigned to the prison from midnight to noon, and the "P.M. Shift," from noon to midnight. These orders remained in effect until the end of the emergency.

The shifts continued from November 26 until the Cubans surrendered on December 4. After the surrender, plaintiffs worked eight-hour shifts through December 6 to secure the prison. Ten agents worked nine twelve-hour shifts at the prison and sixteen agents worked eight twelve-hour shifts.

We grant this motion, and reissue the Opinion and Order for publication this date, July 5, 1995.

The Assistant Special Agent in Charge contacted FBI Headquarters to request regularly scheduled overtime on behalf of the agents. This request was made at some time after Sunday, November 29—probably on Wednesday, December 2.

Charles T. Booth, Supervisory Special Agent at FBI Headquarters, had the responsibility for initial approval of the request. Special Agent Booth denied plaintiffs' request because alternative actions, such as bringing in agents from other field offices, were preferred under FBI guidelines. Plaintiffs appealed this ruling to the General Accounting Office, and GAO denied plaintiffs' appeal for overtime pay. Plaintiffs now appeal to this court.

## DISCUSSION

Congress authorized overtime pay pursuant to 5 U.S.C. §§ 5542, 5545. Time and one-half pay is authorized for general overtime *officially ordered or approved.* 5 U.S.C. § 5542(a). If overtime hours cannot be controlled administratively, an employee receives annual premium pay. 5 U.S.C. § 5545(c)(2). The FBI agents who are plaintiffs in this case receive annual premium pay.

■ An employee who receives annual premium pay is excluded from all other forms of premium compensation, except for "regularly scheduled overtime, night, and Sunday duty, and holiday duty." 5 U.S.C. § 5545(c)(2). Thus, a position compensated with annual premium pay cannot receive general overtime unless the overtime is officially ordered or approved, and scheduled. Congress delegated the authority to promulgate regulations for the administration of premium pay to the Office of Personnel Management (OPM). 5 U.S.C. § 5548 (1988).[1]

■ The issue is whether the FBI should have scheduled the overtime as part of the employee's regular administrative work week. *Buchan,* 31 Fed.Cl. at 499. If the FBI could have scheduled the overtime because the work was habitual and routine, but failed to do so, the agents would be eligible for regularly scheduled overtime. *Buchan,* 31 Fed.Cl. at 499.

Agent Booth at FBI Headquarters did not receive the request for regularly scheduled overtime until after November 28, the last day for scheduling plaintiffs' work week. Prior to this request, Booth did not know which FBI agents were working at the riot, and he did not know their schedule. Therefore, FBI Headquarters could not have predicted on November 28 that the twelve-hour shifts would last a full seven days, and that regularly scheduled overtime was appropriate under FBI and OPM regulations.

A more complete description of the facts and law of this case can be found at *Buchan,* 31 Fed.Cl. 496. For the reasons stated herein and on the record of that trial, we direct the clerk to enter judgment for defendant.

---

1. Those regulations may be found in *Buchan v.*    *United States,* 31 Fed.Cl. at 497–98.