John **BURICH**

v.

The **UNITED STATES**.

No. 156–63.

United States Court of Claims.

Oct. 14, 1966.

Morris Lavine, Los Angeles, Cal., attorney of record, for plaintiff.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant, John G. Roberts, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

Plaintiff, a United States deputy marshal, seeks, in this action, to recover overtime compensation alleged to be due under section 201 of the Federal Employees Pay Act of 1945, as amended.[1] The case is before us on cross-motions for summary judgment. Upon the record, which discloses no material issues of

---

1. Federal Employees Pay Act of 1945, ch. 212, § 201, 59 Stat. 296, as amended, 5 U.S.C. § 911 (1964).

fact, we conclude that plaintiff's motion must be denied and that defendant's cross-motion for summary judgment must be granted.

Since 1949, plaintiff has been employed as a United States deputy marshal in the marshal's office at San Diego, California. His duties in this capacity encompass a variety of activities which range from the transportation of prisoners and the serving of process to the execution of writs and attendance at court. Although the normal workday is from 8:30 a. m. to 5 p. m. (5 days a week), the nature of the work is such that irregular, though recurrent, overtime is frequently experienced. On occasion, such overtime embraces holiday, weekend, and night work.

Since 1955, compensation for plaintiff's overtime has been by way of premium payments as authorized by section 208(a) of the Federal Employees Pay Act Amendments of 1954.[2] Prior to this time, plaintiff received no form of overtime compensation, although request for this had been included in an earlier claim that plaintiff had filed with the General Accounting Office in 1962. He sues here to recover for both periods, i. e., for the failure to have been paid any overtime prior to May 1955, and, as to the later period, for the monetary difference between the premium compensation which he received and the hourly overtime compensation which he claims.[3] Suit was commenced in this court on June 10, 1963.

In claiming entitlement to overtime pay as opposed to premium pay extending through to the date of his initial employment (i. e., July 21, 1949), plaintiff is faced with two obstacles: First, this court's statute of limitations and, secondly, the necessity of demonstrating the inappropriateness of premium compensation to the facts in this case. Neither of these has been overcome.

■ This court has long adhered to the view that a suit for compensation due and payable periodically is, by its very nature, a "continuing claim" which involves multiple causes of action, each arising at the time the Government fails to make the payment alleged to be due. Friedman v. United States, 310 F.2d 381, 159 Ct.Cl. 1 (1962), cert. denied, Lipp v. United States, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963); Cannon v. United States, 146 F.Supp. 827, 137 Ct.Cl. 104 (1956).

■ Implicit in the "continuing claim" characterization is the fact that no congressionally designated administrative machinery exists to decide either the legal or factual aspects of the claim. See *Friedman,* supra. Absent such an administrative prerequisite, the cause of action accrues upon completion of the work for which recovery is sought. Plaintiff's contention that his claim accrued at the time of its rejection by the

---

**2.** Federal Employees Pay Act Amendments of 1954, ch. 1208, § 208(a), 68 Stat. 1111, as amended, 5 U.S.C. § 926 (1964).

**3.** Plaintiff's premium pay was computed on the following basis: Three classes of overtime rates were recognized, each depending upon the number of overtime hours worked in four consecutive pay periods, referred to as "eligibility periods." The maximum statutory percentage permitted, i. e., 15 percent of the basic wage rate, was granted to those employees who averaged 6 overtime hours, or more, per week, thereby attaining a minimum of 48 overtime hours in an eligibility period. Ten percent premium pay applied to those employees whose average overtime was from 4 to 6 hours per week, with a mini-

mum of 32 overtime hours for the entire period. Five percent premium pay was authorized in the case of employees who averaged 2 to 4 hours weekly overtime, thereby establishing a minimum of 16 hours for the eligibility period. Premium overtime was not subject to accumulation, i. e., there could be no carryover of hours from one eligibility period to another. Thus, a failure to maintain the total minimum required for a category would result in the employee being dropped to the next lower category. In the case of an employee who failed to maintain the minimum of 16 hours required for the 5 percent category, overtime was compensated through compensatory leave on the basis of equivalent time off for the time served.

General Accounting Office in September 1962 ignores the fact that recourse to that office has never been deemed a condition precedent to suit in this court. A decision by that office is not binding upon this court, nor does it govern the timeliness of an action here. Numerous cases have so held. See Iran Nat'l Airlines v. United States, 360 F.2d 640, 175 Ct.Cl. —— (May 1966); Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed. 2d 306 (1957); Marr v. United States, 106 F.Supp. 204, 123 Ct.Cl. 474 (1952), cert. denied, 345 U.S. 956, 73 S.Ct. 937, 97 L.Ed. 1377 (1953). From this it follows that the cognizable limits of plaintiff's continuing claim embrace the 6 years preceding the commencement of his action here, events occurring prior to June 10, 1957, being no longer actionable in this court. Hence, the issue before us concerns only the sufficiency of the overtime compensation which plaintiff has been receiving since that date, i. e., whether he was entitled to hourly computed overtime as opposed to the premium payments actually received.

Under present Federal overtime legislation, two distinct forms of compensation are provided. Hours of work, in excess of the 40-hour administrative workweek, which have been "officially ordered or approved" must be compensated, according to 5 U.S.C. § 911, at an hourly rate equal to one and one-half times the employee's basic hourly compensation. In the case of hours of duty which exceed the basic workweek, but which cannot be controlled administratively, 5 U.S.C. § 926 calls for premium payments, such premiums (in plaintiff's case) not to exceed 15 percent of the employee's basic annual rate of compensation.

Although not expressly so stated, plaintiff's position seems to suggest that this comprehensive system of overtime represents a matter of interchangeable substitutes rather than independent schemes designed for separate and distinct types of overtime. A review of both the statutory language as well as relevant legislative history clearly shows this not to be the case.

Since the time of its enactment, plaintiff has received premium payments under the provisions of 5 U.S.C. § 926 (1964), which provide:

§ 926. Premium compensation; irregular and unscheduled tours of duty

The head of any department, independent establishment, or agency, including Government-owned or controlled corporations, or of the municipal government of the District of Columbia may, with the approval of the Civil Service Commission, provide that—

\* \* \* \* \* \*

(2) any officer or employee in a position in *which the hours of duty cannot be controlled administratively,* and which requires substantial amounts of irregular, unscheduled, overtime duty and duty at night and on holidays with the officer or employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium compensation for such duty on an annual basis *in lieu of premium compensation provided by any other provisions of this chapter, except for regularly scheduled overtime duty.* \* \* \* (Emphasis supplied.)

Based upon the foregoing, it is evident that premium compensation and regularly scheduled overtime relate to independent, mutually exclusive, methods for compensating two distinct forms of overtime work. The statute authorizes premium compensation where the hours of duty cannot be controlled administratively; it provides this in lieu of all other forms of premium compensation (i. e., compensation for night and holiday work) *except* for regularly scheduled overtime duty. Thus, the statute does not preclude an employee from receiving regular (hourly) overtime pay in addition to premium pay, but he cannot claim both for the same work. Neither may he claim hourly compensation for administratively uncontrollable overtime. Under the terms of this statute, administratively uncontrollable overtime falls clear-

ly outside the scope of regularly scheduled overtime. This distinction plaintiff fails to bear in mind.

■ In claiming entitlement to overtime on an hourly basis, plaintiff emphasizes that his assignments were regularly scheduled. We do not disagree. But the point we would emphasize is that, as a consequence of his regular assignments, he experienced erratic and irregular periods of overtime work. His assignments were received on a daily basis, but neither the nature of the work nor the length of time required in its performance could be ascertained beforehand. To the extent that this work involved overtime, it is clear that such overtime could perhaps be anticipated, but it could not be regulated. And thus the point of distinction is that plaintiff was not assigned overtime; he was assigned a task which *might* require overtime. Under such circumstances, his additional duty hours represented administratively uncontrollable overtime rather than regularly scheduled overtime.

Any doubt concerning the applicability of section 926 to plaintiff's case is dispelled upon review of the legislative history. See S.Rep.No.1992, 83d Cong., 2d Sess. (1954), 3 U.S.Code Cong. & Ad. News 3816 (1954). This reveals that Congress, aware that existing overtime legislation presented administrative difficulties when applied to employees whose overtime was largely uncontrollable, contemplated that its proposed legislation would remedy this problem by providing a specific statutory basis permitting the payment of additional compensation in such cases. Absent such legislation, plaintiff's right to extra pay would be, at best, a speculative matter.

S.Rep.No.1992, supra, states:

Subparagraph (a) (2) of section 401 of the new title authorizes additional annual pay at rates up to 15 percent of base pay rates, in lieu of other pay for irregular or unscheduled overtime duty and for night and holiday duty, for employees whose hours of duty cannot be controlled administratively and who are required to perform substantial amounts of irregular overtime and night and holiday duty, with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty. These employees would receive other overtime pay, computed in the usual manner, for regularly scheduled overtime work, officially ordered or approved. This subparagraph is specifically directed at those investigators of criminal activities whose positions meet all the conditions specified. It would permit similar payments to employees in other types of positions in which all the same conditions are present in an equivalent degree. [3 U.S.Code Cong. & Ad.News at 3824]

Even more explicit are the views expressed by the Civil Service Commission —the agency appointed by Congress to control the implementation of section 926. The Commission's report to the Senate stated:

The two special types of Federal employment covered by this section do not fit well within the standard overtime-pay provisions. Some employees, such as firefighters, are on duty for long periods but are in a standby status for much of their time on duty, at their stations ready to answer any calls but not performing actual work. Hours of work of certain other employees, such as investigators of criminal activities, cannot be controlled administratively in the usual way. Such assignments as trailing suspected criminals require substantial amounts of unscheduled overtime work and night and holiday duty. While the Federal Employees Pay Act presently includes these two groups under its hourly premium pay provisions, serious administrative problems have been caused by the large amount of irregular overtime or standby duty required of these employees.

The Commission supports the proposals in section 202(g) [5 U.S.C. § 926]. Additional compensation on an annual basis for these two groups

would be easy to administer, fair to the Government, and equitable for the employees covered. The latter would be especially true for those investigators whose peculiar working conditions now frequently require substantial amounts of overtime work without any pay at all, and for those employees who are required to perform a large amount of standby duty. [3 U.S.Code Cong. & Ad.News at 3834]

■ In light of both the statutory language and its specific purpose, we see no merit to plaintiff's alleged entitlement to overtime based upon an hourly rate. That plaintiff's rate of overtime compensation did not result in his being paid as much as an employee compensated on an hourly basis cannot in itself bring him within the reach of a statute (i. e., 5 U.S.C. § 911) which Congress recognized as essentially inadequate to cover his position and for which position it specifically provided an alternative remedy.

For the same reason, we find plaintiff's reliance upon our decision in Aviles v. United States, 151 Ct.Cl. 1 (1960), to be misplaced. In that case, we held plaintiff was entitled to night differential pay (as provided by 5 U.S.C. § 921) even though such night work was not part of the regularly scheduled workweek as defined in the departmental regulations. Our decision rested on the fact that plaintiff was called upon regularly to perform night work and that, by virtue of its habitual and recurrent nature, such work could have and indeed should have been formally scheduled. Recovery was granted because the defined workweek failed to acknowledge the actual, *controllable* workweek. That is not the case here. Understandably, plaintiff does not claim that his overtime work was amenable to administrative control. He claims only that his assignments were "regularly" scheduled. This is not enough.

Reliance upon Missel v. Overnight Motor Transp. Co., 126 F.2d 98 (4th Cir.),

aff'd, 316 U.S. 572, 62 S.Ct. 1216, 86 L. Ed. 1682 (1942), is similarly inapposite. The question in that case. concerned the interpretation of the overtime provisions of the Fair Labor Standards Act of 1938[4]; it has no bearing upon the present issue. That overtime is in some instances compensated on an hourly basis does not alter the fact that Congress has also provided for a different system of overtime compensation, the application of which is fully warranted here.

■ Plaintiff raises several additional issues which we also find to be without merit. First, he claims overtime credit for time spent while "traveling empty," i. e., travel which occurs after the issuance of a summons, or the delivery of a prisoner, and, in those situations where a prisoner is to be picked up, the travel time involved in going to the "pickup" point.

None would dispute that this travel was a necessary incident to plaintiff's assigned functions. However, time spent in travel is creditable as working time only under the criteria enumerated in 5 U.S.C. § 912b,[5] which provides:

§ 912b. Time in travel status

For the purposes of this chapter, time spent in a travel status away from the official-duty station of any officer or employee shall be considered as hours of employment only when (1) within the days and hours of such officer's or employee's regularly scheduled administrative workweek, including regularly scheduled overtime hours, or (2) when the travel involves the performance of work while traveling or is carried out under arduous conditions.

To the extent that plaintiff's travel claim is predicated upon the assertion that it was regularly scheduled, it suffers from the same infirmity that we have already noted, namely, that his overtime was not susceptible to administrative control beyond the point of recognizing that it might occur. Thus, it was

---

4. Chapter 676, § 7, 52 Stat. 1063, as amended, 29 U.S.C. § 207 (1964).

5. Federal Employees Pay Act Amendments of 1954, ch. 1208, § 205(b), 68 Stat. 1110.

not "regularly scheduled" either within the meaning of 5 U.S.C. § 926 or within the meaning of 5 U.S.C. § 912b.

■ Nor has plaintiff established his entitlement under the additional criteria. Travel which involves "the performance of work while traveling" means nothing less than what it says; it speaks to direct, productive benefit. The *performance* of work occurs when plaintiff is engaged in the transportation of a prisoner or the delivery of a summons; performance ceases when the assigned task has been accomplished. Travel occurring thereafter becomes an incident of work, and this the statute holds noncompensable. The failure to maintain such a distinction would render the statute meaningless.

Plaintiff's reference to Tennessee Coal Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949 (1944), does not convince us otherwise. Like Missel, supra, this case also involves the Fair Labor Standards Act. That act can have no application here. As a Federal employee, plaintiff's entitlement to compensable travel time is governed by 5 U.S.C. § 912b, not by the Fair Labor Standards Act.

■ As to the remaining contention respecting travel "under arduous conditions," suffice it to say that, in our judgment, this requires more than a showing that the travel by automobile was carried out under inclement weather conditions.

■ Next, plaintiff disputes the travel allowances he received. His claim is that Congress, in authorizing the payment of travel expenses for the use of privately owned vehicles, intended that the maximum amount which could be allowed should be the actual amount paid.

Pursuant to regulations, plaintiff received 10 cents per mile while traveling in a duty status and 8 cents per mile while traveling empty. The maximum rate which could have been paid for the period in question (i. e., 1957–61) was 10 cents per mile. Thereafter, the maximum permissible mileage rate was increased by Congress to 12 cents per mile. For this latter period, plaintiff received 10 cents per mile for all travel. He now seeks the 2-cent differential common to both the pre- and post-1961 period.

The statute in question, the Travel Expense Act of 1949,[6] provides that Federal employees should, under regulations prescribed by the Director of the Bureau of the Budget, be paid, in lieu of actual expenses, an amount *"not to exceed * * * 12 cents per mile for the use of privately owned automobiles * * *."* (Emphasis supplied.) To claim, as plaintiff does, a right to the maximum statutory amount of travel allowances would require a revision of the statute. The act states that the amount which may be paid shall not exceed the prescribed rate —it clearly does not establish the rate itself. Plaintiff does not claim that the prescribed regulations were arbitrary in the sense that they failed to provide adequate or realistic rates of reimbursement. The claim is, as we have indicated, based entirely upon the contention that the maximum rates prescribed were, at the same time, the only rates prescribed. The statute does not support this construction.

■ We come then to the final point which plaintiff has raised. His petition claims compensation due and owing to him for "annual leave forfeited due to necessary work * * *" and "time allowed for sick leave * * * earned but unused * * *." Neither of these allegations supports a claim to overtime compensation. The implicit premise appears to be that time owing to plaintiff (either as annual leave or sick leave) may be converted into its monetary equivalent if not used up. We know of no statutory authority for such a result. Plaintiff's brief does not particularize the nature of the forfeiture he alleges. Neither in his motion nor in his supplemental brief does he allege any facts adequate to support a claim against the Gov-

6. Chapter 185, § 4, 63 Stat. 166, as amended, 5 U.S.C. § 837 (1964).

ernment on this issue. Nor has he met the defense on this issue.

The matter of leave accumulation is, as defendant points out, the subject of statutory regulation and not administrative discretion. If plaintiff elected not to use his annual leave, he could accumulate it—up to a maximum of 30 days.[7] Beyond that, accumulation is prohibited. But, in no event, could this prohibition constitute the basis of an actionable claim. With respect to plaintiff's sick leave, there is no limit to the number of days that may be accumulated,[8] nor any basis for converting such accumulated days into a monetary equivalent presently payable.

For the foregoing reasons, we deny plaintiff's motion for summary judgment and grant summary judgment for defendant. Plaintiff's petition is dismissed.

Cowen, C. J., and Collins, J., dissented.

---

**7.** Annual and Sick Leave Act of 1951, ch. 631, § 203, 65 Stat. 679, amended by ch. 178, § 3, 67 Stat. 137, as amended, 5 U.S.C. § 2062(c) (1964).

**8.** Annual and Sick Leave Act of 1951, ch. 631, § 204, 65 Stat. 681, as amended, 5 U.S.C. § 2063 (1964).