Per Curiam:
This case came before the court on defendant’s exceptions to a recommended decision filed August 2, 1972 by Trial Commissioner Harry E. Wood, pursuant to Buie 134(b). The court has considered the case on the briefs and oral argument of counsel. Since the court agrees with the decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case.*
We agree entirely with Commissioner Wood’s findings and legal conclusions, and adopt the same as our own, but find it necessary to explain ourselves on one legal issue more fully than he does, and making our own choice of words.
*662 The plaintiffs were nursing assistants employed at the Veterans Administration Hospital at Fort Meade, South Dakota. Their claim is for overtime compensation under the Federal Employees Pay Act of 1945, 59 Stat. 295, 296, as amended, 5 U.S.C. § 911 (1964).
The Act authorizes overtime compensation only for “hours of work officially ordered or approved in excess of forty hours in any administrative work week”. It is conceded and not in issue here that hours of work not so officially ordered or approved, however onerous, are not compensable, and moreover, if the person who ordered or approved the work was a subordinate in the agency, a proper written delegation of authority to him must appear. 5 C.F.R. 25.221 (b) (1961); Bowling v. United States, 181 Ct. Cl. 968 (1967).
The findings show that the alleged overtime consisted partly of time spent getting into and out of Government uniforms owned by the Government and kept at the work site. Time for this was not allowed in the basic 40 hour work week. Partly it also consisted of required early reporting for briefing, etc., before the start of shifts. Time required for these purposes was not scheduled in any formal sense and varied from person to person and day to day. Whether it was regarded as scheduled legally is to be decided. The times allowed by the commissioner are arrived at by averaging, as clearly they had to be.
Assuming, as in this introductory comment we do, that the amount of overtime is established, the crucial issue becomes whether 90 plaintiffs must be denied their wages earned over two and a half years time, because the hospital authorities lacked authority to order or approve the overtime, and the VA authorities in Washington did not 'know what was being done. This proposition demands the careful scrutiny of the court before it can be accepted.
Defendant relies on VA regulations detailed in the 'findings. >In the latter part of the claim period pertinent ones read as follows:
(a) Regular overtime work means overtime work which is regularly scheduled. For this purpose, any overtime work scheduled for an employee in advance of the administrative workweek in which it first is to *663 occur, and which will recur oyer an extended period of time '(at least £ consecutive administrative workweeks) constitutes regular overtime.
(b) Irregular or occasional overtime work means overtime work which is not regularly scheduled.
Another provision read:
(b) Basic Workweek Plus Regular Overtime. A regularly scheduled administrative workweek consisting of the 40-hour basic workweek, plus a period of regular overtime work, may be established * * * by Directors or Managers of field stations when authorized by their respective department heads. Forpurposes of leave and overtime pay administration, the authorization shall specify for such employee (s) by calendar day and number of hours a day, the periods included in the regularly scheduled administrative workweek which do not constitute a part of the basic workweek * * *
By another paragraph, “Directors and Managers of field stations” were authorized to order and approve irregular or occasional overtime. The regulations in effect during prior parts of the claim period embodied some variances in language, but none pertinent to the instant claims.
Defendant says that plaintiffs’ overtime was “regular” because it was performed every day, not occasionally, and therefore it was compensable only if it had headquarters approval or was authorized by a delegation of authority to the field official, lacking here.
It will be noted that with respect to debatable preliminary and posbliminary activities, always a battleground in overtime litigation, defendant, if its interpretation is correct, has devised a wonderful heads-I-win, tails-you-lose, regulation. It could never lose any litigation wherein employees claim overtime compensation in this area. If the field official, wishing to order such activities, recognized he was clearly ordering overtime, he would either obtain authority or abstain. If, however, he was in doubt, he could order the work anyway and subject the Government to no possible liability. If it were held not to be overtime, his order would be authorized and he would have no problems. If it were held to be overtime he would still win the lawsuit, for in that event his *664 order ¡would be -unauthorized. The 'Government’s theory requires that whether the order is authorized or not cannot be acertained ab initio, but turns on whether the court characterizes the order as one commanding overtime work. We are reluctant to impute to the VA an intent to frustrate the apparent will of 'Congress that overtime work shall be paid for. We think that Government employees ordered to do this or that, are entitled to know whether or not the order is authorized, ab mitio and without reference to its ultimate pecuniary consequences. For the employee, the first question, after all, is whether an order is lawful and, being lawful, must be obeyed. An order that is lawful if it produces no pecuniary consequences, but otherwise is unlawful, is contrary to all principle. An agency that operated on such a system could expect to have its enterprises break up in chaos, and would deserve nothing less. If the involved regulations can be construed consistent with these considerations, they should be.
A careful analysis of the involved regulations shows that they lend themselves to other constructions. We read that “regular overtime” is overtime that is “regularly scheduled”. The word “regular” has a number of meanings. Two that are here relevant are defined in Webster’s Unabridged as follows:
* * * 3a : steady or uniform in course, practice, or occurrence : not subject to unexplained or irrational variation : steadily pursued : ORDERLY, METHODICAL [-habits] b (1) : returning, recurring, or received at stated, fixed, or uniform intervals [a — income] [in the — course of events] (2) * * * 4a : constituted, selected, conducted, made, or otherwise handled in conformity with established or prescribed usages, rules, discipline [a — meeting] [a- — election] b : NORMAL, STANDARD, CORRECT : as (1) : undeviating in conformance to a standard set (as by convention, established authority, or a particular group) * * *
“Regular” may characterize the regular repetition of similar acts in a time frame, or it may only indicate they are correct and proper. It will be seen that defendant has arbitrarily selected one meaning against another, that is, it considers “regular overtime” is overtime that regularly recurs at symmetrical spaced intervals. Yet, Aviles v. United States, *665 151 Ct. Cl. 1 (1960), a case defendant cites, indicates that overtime may be “regular” and “regularly scheduled”, though it is irregular and unforeseeable in its actual occurrence. Defendant assigns no reason why “regular overtime” should not be considered to be lawfully authorized overtime, i.e., regularly prescribed according to the statutes and regulations applicable, even if it be irregular so far as concerns constancy and frequency of its recurrence. On the other hand, an overtime that was added on to every work day of the year could semantically be “irregular” if not ordered and directed according to law. Moreover, “regular overtime” here must be “regularly scheduled”. The regulation tells us that this means setting up a schedule of working hours that states separately the basic and the overtime hours the employee is required to put in. Nothing of that sort occurred here, nor could occur with respect to preliminary and postliminary activities the ordering authority failed to recognize as being overtime.
Stating the case at its best for defendant it is doubtful if plaintiffs’ overtime was “regular” but certain that it was not “scheduled”. Since the work here involved was thus not “regularly scheduled” it was “irregular or occasional overtime”, which by the agency’s own definition includes all overtime not “regularly scheduled”. Since field officers had authority to order “irregular or occasional overtime” they had authority to order the preliminary and postliminary activities here involved, even if held to be compensable overtime.
Defendant cites Aviles v. United States, supra, as defining “regularly scheduled” according to its contentions. This the case does if its real thrust is disregarded. Plaintiffs were Department of Agriculture meat inspectors. They claimed compensation for night premium under a statute, which allowed this extra compensation only for “regularly scheduled” hours. Defendant had required plaintiffs to stay with meat processors if they operated at night but it refused to schedule the work as overtime because the hours of the processors could not be predicted in advance. Apparently they did not schedule their own work hours. We held that the work was regularly scheduled because it ought to have *666 been scheduled. We thought defendant could have prescribed a regular schedule making plaintiffs perform only so much overtime as the meat processors might from time to time require.
See explanation of Aviles in Burich v. United States, 177 Ct. Cl. 139, 366 F. 2d 984 (1966), cert. denied, 389 U.S. 885, reh. denied, 389 U.S. 998 (1967). We said, 177 Ct. Cl. at 147, 366 F. 2d at 989:
*• *■ * Our decision rested on the fact that plaintiff was called upon regularly to perform night work and that, by virtue of its habitual and recurrent nature, such work could have and indeed should have been formally scheduled. Recovery was granted because the defined workweek failed to acknowledge the actual, controllable workweek. * * * (Emphasis in original.)
Aviles was an equitable decision, treating that as done which ought to have been done. In urging us to fellow Aviles here, defendant is really saying equity requires that the local administrators should have scheduled the uniform changing as overtime and should have failed to obtain permission for doing so from headquarters, and must be treated as if they had done the one and not done the other. This is a most remarkable application of equitable principles. Equity here requires that the natural consequence should be drawn froin defendant’s failure to schedule the overtime as its own regulation required: it was not regularly scheduled, therefore it was irregular overtime and could be ordered locally.
As to treating orders 'as issued that ought to have been issued, compare also Byrnes v. United States, 163 Ct. Cl. 167, 324 F. 2d 966 (1963).
For the above reasons, we hold that the overtime here involved was ordered or approved by an officer having delegated authority to do so. We need add nothing to the commissioner’s opinion, findings, and conclusions, on other issues. It is concluded that plaintiffs are entitled to recover on their claims to the extent he has determined. Accordingly, judgment is entered for plaintiffs (except those named in Findings 2 (b) and (c)). Unless the parties stipulate the amount of recovery due each recovering plaintiff, that amount is to *667 be determined in further 'proceedings pursuant to Hule 101 (c) in accordance ¡with the findings here.
The court further concludes as a matter of law that the plaintiffs named in Findings 2 (b) and (c) are not entitled to recover and the petition as to such plaintiffs is dismissed.
Commissioner Wood’s opinion and findings follow:
Plaintiffs, 103 of whom were employed by the Veterans Administration as nursing assistants at the Fort Meade, South Dakota, VA Hospital during the “claim period” (May 13, 1962 to December 15, 1965), seek to recover overtime compensation under the provisions of the Federal Employees Pay Act of 1945, 59 Stat. 295, 296, as amended, 5 U.S.C. § 911 (1964).
For the reasons set forth in the following detailed and ultimate findings of fact and conclusions of law, it is concluded that plaintiffs (except the 13 plaintiffs named in finding 2(b), who were not so employed at any time here relevant, and the three plaintiffs named in finding 2(c)[1] are entitled to recover. Absent agreement by the parties as to the amount of each plaintiff’s individual recovery, such amount should be determined in further proceedings pursuant to Rule 131 (c).
It is further concluded that those plaintiffs named in findings 2(b) and (c) are not entitled to recover and the petition as to such plaintiffs should be dismissed.

The dissenting opinion of Skelton, Judge, ini which Bennett, Judge, joins, follows the opinion of the trial commissioner.

 These three plaintiffs were so employed during the claim period. However, plaintiffs Gray and Pawlowski were deceased at the commencement of this litigation, and plaintiff Harlow died prior to April 1970. No application for substitution under Rule 66 has been made.