# Administratively Uncontrollable Overtime of Agent/Examiners in the FBI Laboratory

Under 5 U.S.C. § 5545(c)(2), premium pay on an annual basis is authorized for "Administratively Uncontrollable Overtime" where duties of position are of such a nature that they cannot be performed during normal business hours.

Whether work performed by agent-examiners in the Federal Bureau of Investigation Laboratory is by its nature such as to qualify them for premium pay under § 5545(c)(2) is a question of fact.

February 22, 1980

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, JUSTICE MANAGEMENT DIVISION

This responds to your request for our comments on a letter from the General Accounting Office (GAO) to the Attorney General concerning the applicability of administratively uncontrollable overtime (AUO) to agent-examiners in the Federal Bureau of Investigation (FBI) Laboratory.

As you know, it is not the function of this Office to decide questions of fact; hence we cannot, and indeed lack the information to, comment on the factual statements contained in the GAO letter. Our role, therefore, must be limited to providing you with considerations governing and the tests for determining the applicability of AUO.

AUO is provided for in 5 U.S.C. § 5545(c)(2), pursuant to which:

> [t]he head of an agency, with the approval of the Office of Personnel Management, may provide that—
>
>     *      *      *      *      *
>
> (2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than

10 per centum nor more than 25 per centum, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position.[1]

This complicated section is derived from § 204 of the Federal Employees Pay Amendments of 1954, 68 Stat. 1109. According to the legislative history, this provision was "specifically directed at those investigators of criminal activities whose positions meet all conditions specified" in the section. S. Rep. No. 1992, 83d Cong., 2d Sess. 8–9 (1954); *see also* H.R. No. 2665, 83d Cong., 2d Sess. 23 (1954).

The implementing regulations issued by the Office of Personnel Management (OPM), 5 C.F.R. § 550.153, are illustrative of the typical situations that § 5545(c)(2) is designed to cover:

§ 550.153   Bases for determining positions for which premium pay under § 550.151 is authorized.

(a) The requirement in § 550.151 that a position be one in which the hours of duty cannot be controlled administratively is inherent in the nature of such a position. A typical example of a position which meets this requirement is that of an investigator of criminal activities whose hours of duty are governed by what criminals do and when they do it. He is often required to perform such duties as shadowing suspects, working incognito among those under suspicion, searching for evidence, meeting informers, making arrests, and interviewing persons having knowledge of criminal or alleged criminal activities. His hours on duty and place of work depend on the behavior of the criminals or suspected criminals and cannot be controlled administratively. In such a situation, the hours of duty cannot be controlled by such administrative devices as hiring additional personnel; rescheduling the hours of duty (which can be done when, for example, a type of work occurs primarily at certain times of the day); or granting compensatory time off duty to offset overtime hours required.

---

[1] According to the opening clause of 5 U.S.C. § 5545(c)(2), the allowance of AUO requires the approval of the Office of Personnel Management (OPM). Moreover, as authorized by 5 U.S.C. § 5548, OPM has issued regulations interpreting § 5545(c)(2). In these circumstances, the application of the pertinent law to the specific facts would appear to be primarily within the jurisdiction and responsibility of OPM. Moreover, since OPM, or rather its predecessor the Civil Service Commission (CSC), presumably approved the allowance of AUO in the FBI Laboratory, that approval would be entitled to the greatest respect if the working conditions in the FBI Laboratory are still the same as those on which the CSC approval of AUO was based.

These regulations, together with a number of judicial decisions interpreting § 5545(c)(2), *e.g., Burich* v. *United States,* 366 F.2d 984 (Ct. Cl. 1966), and *Fox* v. *United States,* 416 F. Supp. 593 (1976) (both involving United States Marshals Service),[2] establish the general considerations for applying that section. The basic consideration is that the principal test is the nature rather than the amount of the work. Overtime caused by the amount of work is administratively "controllable" within the meaning of the section according to 5 C.F.R. § 550.153, *supra,* because it can be avoided at least theoretically by the hiring of additional personnel. 5 C.F.R. §550.153 and *Fox* v. *United States, supra* at 595–96, 598.

On the other hand, overtime is generally uncontrollable where the work is of such a nature that it cannot be interrupted at the normal quitting time and resumed the next morning. A typical example of such assignments, of course, is the investigatory work referred to in the legislative history of the 1954 Act, in the OPM regulations, and *Fox* v. *United States, supra,* at 597. Other examples are work schedules mandated by other agencies, *e.g.,* the demands of the courts on the Marshals' services. *Id.,* at 595–96. Laboratory work may be uncontrollable where the result is needed urgently for a trial or an investigation, or where a test has to be brought to its conclusion and cannot be interrupted. These considerations were expressed in the *Burich* case as follows:

> [A]s a consequence of his regular assignments, he experienced erratic and irregular periods of overtime work. His assignments were received on a daily basis, but *neither the nature of the work nor the length of time required in its performance could be ascertained beforehand.* To the extent that this work involved overtime, it is clear that such overtime could perhaps be anticipated, but it could not be regulated. And thus the point of distinction *is that plaintiff was not assigned overtime; he was assigned a task which might require overtime.* Under such circumstances, his additional duty hours represented administratively uncontrollable overtime rather than regularly scheduled overtime.

366 F.2d at 988 (emphasis supplied).

The critical notion inherent in all those discussions and tests is the assignment of a task that according to its nature—and not because of a shortage of manpower—has to be completed without regard to normal business hours.

---

[2] Other cases construing § 5545(c)(2) are *Byrnes* v. *United States,* 330 F.2d 986 (Ct. Cl. 1964), and *Fix* v. *United States,* 368 F.2d 609 (Ct. Cl. 1966).

As indicated above, this Office is not familiar with the duties of agent-examiners in the FBI Laboratory. We do not consider it appropriate for us either to criticize or to accept the analysis of those positions in the GAO letter. We believe, however, that our discussion, together with the factual data you have requested from the FBI, will assist you in preparing a reply to the GAO.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*