Albert **SLUGOCKI**, et al.,
**Appellees/Cross-Appellants,**

v.

The **UNITED STATES**, et al.,
**Appellants/Cross-Appellees.**

**Appeal Nos. 85–2824, 86–709.**

United States Court of Appeals,
Federal Circuit.

April 22, 1987.

As Modified on Petition for
Rehearing June 1, 1987.

Arthur W. Tifford, Miami, Fla., argued for appellees/cross-appellants.

Robert A. Reutershan, Asst. Director, Commercial Litigation Branch, Civ. Div., Dept. of Justice, Washington, D.C., argued for appellants/cross-appellees. With him on brief were Richard K. Willard, Asst. Atty. Gen., and David M. Cohen, Director of counsel was Lucille K. Cirino, Office of Legal Counsel, U.S. Marshals Service.

Before FRIEDMAN, NEWMAN AND ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Appellees, 35 Deputy United States Marshals, brought this class action in the United States District Court for the Southern District of Florida, asserting various claims concerning their overtime compensation.[1] The district court held, *inter alia*, (1) that appellees were entitled to be paid overtime pay under 5 U.S.C. § 5542 for a portion of the hours for which they had been paid administratively unscheduled overtime under 5 U.S.C. § 5545(c)(2), (2) that the formula used for computing the amount of appellees' overtime pay under the Fair Labor Standards Act[2] violated the requirements of that Act, and (3) that appellees were entitled to an award of attorneys' fees under the Fair Labor Standards Act. Both parties appealed.[3] We affirm in part, reverse in part, vacate in part and remand.

## BACKGROUND

Appellees were Deputy United States Marshals (DUSMs) in the Southern District of Florida between 1971 and 1978. During that time, their regular workweek was 40 hours, consisting of five eight-hour workdays, Monday through Friday. Their duties included eight major categories of work: (1) serving writs, summonses and other papers; (2) serving and investigating warrants; (3) morning prisoner pick-up for court attendance; (4) prisoner return either in the afternoon or at the end of the day; (5) courtroom duty; (6) prisoner coordination trips; (7) special assignments, consisting of protecting witnesses, protecting judges, and supervising jury sequestration; and (8) a general category, "other." As a result of an increasing workload and shortage of manpower, they were required to regularly work substantial amounts of overtime.

When appellees worked beyond their regularly scheduled 40-hour workweek, Title 5

1. The parties agree that the district court had jurisdiction over appellees' claims under 28 U.S.C. § 1346(a)(2) (1982) (the Little Tucker Act), on the basis that the amount claimed by any individual plaintiff did not exceed $10,000. This court has jurisdiction on appeal under 28 U.S.C. § 1295(a)(2) (1982).

2. Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201–19 (1982).

3. Although appellees appealed from the judgment, they have raised no issues other than those presented by their response to the Government's arguments.

of the United States Code authorized additional pay pursuant to two sections. For overtime work which management considered to be administratively uncontrollable, the head of the agency could approve pay under 5 U.S.C. § 5545(c)(2),[4] which provides:

> (c) The head of an agency, with the approval of the Office of Personnel Management may provide that—
>
> .    .    .    .    .
>
> (2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled, overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require him to remain on duty, shall receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, *except for regularly scheduled overtime*, night, and Sunday duty, and for holiday duty. Premium pay under this paragraph is determined as an appropriate percentage, not less than 10 percent nor more than 25 percent, of such part of the rate of basic pay for the position as does not exceed the minimum rate of basic pay for GS–10, by taking into consideration the frequency and duration of irregular unscheduled overtime duty required in the position. (Emphasis added.)

Appellees received this form of compensation for overtime work throughout substantially all the period at issue.

For all work in excess of 40 hours which management considered to be "officially ordered and approved" and administratively controllable, Title 5 provides in § 5542 that:

> [H]ours of work officially ordered or approved in excess of 40 hours in an administrative workweek, ... shall be paid for, except as otherwise provided by this subchapter, at the following rates:
>
> (1) For an employee whose basic pay is at a rate which does not exceed the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of basic pay of the employee, and all that amount is premium pay.
>
> (2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10, the overtime hourly rate of pay is an amount equal to one and one-half times the hourly rate of the minimum rate of basic pay for GS–10, and all that amount is premium pay.

Thus, Title 5 authorized "independent, mutually exclusive, methods for compensating [employees for] two distinct forms of overtime work." *Burich v. United States*, 366 F.2d 984, 177 Ct.Cl. 139 (1966). While the statute did not preclude employees from receiving regular overtime pay under § 5542 in addition to AUO pay under § 5545(c)(2), employees could not claim both for the same work. *Id.*, 366 F.2d at 987.

On January 1, 1975, appellees also became entitled to overtime pay pursuant to the Fair Labor Standards Act (FLSA or Act).[5] The FLSA and Title 5 were applied separately in determining overtime pay entitlements, with employees' pay reflecting the greater of the amounts computed by the separate laws. *See Zumerling v. Devine*, 769 F.2d 745, 747 (Fed.Cir.1985). Under § 7(a) of the FLSA, 29 U.S.C. § 207(a), employees were entitled, in the absence of certain exceptions, to receive overtime compensation at a rate of one and one-half

---

**4.** This form of compensation, designated administratively unscheduled overtime (AUO), was eliminated with respect to DUSMs on October 21, 1978.

**5.** The Act established a statutory minimum wage and overtime rate for work in excess of a prescribed maximum number of hours per day and per workweek. The Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, 88 Stat. 55, made the Government subject to the Act as an employer and provided that the Civil Service Commission (now the Office of Personnel Management or OPM) would be responsible for administering the Act with respect to most Government employees. 29 U.S.C. § 203 (1982).

times their "regular rate." Section 7(k), 29 U.S.C. § 207(k), however, created an exception for Government employees engaged in fire protection and law enforcement activities. That section originally provided that:

(k) No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities ... if—

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed 240 hours; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 240 hours to 28 days,

compensation at a rate not less than one and one-half times the regular rate at which he is employed.

On January 1, 1976, "240 hours" was reduced to "232 hours" and, on January 1, 1977, "232 hours" was reduced to "216 hours." *Alexander v. United States*, 1 Cl.Ct. 653, 655 (1983). In computing appellees' FLSA overtime pay, the Marshals Service utilized the formula established by the former Civil Service Commission in Federal Personnel Manual (FPM) Letter 551–5,[6] which included AUO premium pay and AUO hours worked in determining the "regular rate" of pay. This method of computation (hereinafter referred to as the OPM formula) resulted in appellees often being paid less per hour for overtime hours worked than their basic rate of pay per hour for non-overtime work.

Appellee Slugocki filed his complaint on March 14, 1977, alleging that he was entitled to overtime pay pursuant to 5 U.S.C. § 5542 for all hours for which he had received AUO pay. His motion for class certification was granted on December 27, 1977. On March 15, 1979, appellees filed an amended complaint, alleging that the government violated the FLSA by utilizing the OPM formula to compute their FLSA entitlements.

On April 2, 1984, the district court issued a memorandum opinion holding, *inter alia,* (1) that certain AUO work could have been administratively scheduled in advance and should have been paid for as provided in 5 U.S.C. § 5542 instead of being compensated as a part of AUO pursuant to 5 U.S.C. § 5545(c)(2), and (2) that the OPM formula was invalid because it included AUO in the computation of "regular rate" of pay. In a subsequent memorandum opinion, the district court determined that appellees were entitled to an award of liquidated damages, interest, costs, and attorneys' fees. Specific monetary awards were set forth in the court's final judgment dated March 6, 1985, which was amended on July 3, 1985 with respect to the award of interest. The Government in its appeal of the district court's judgment has raised the issues enumerated below.

## ISSUES

1. Whether the district court erred in holding that appellees were entitled to receive overtime pay under 5 U.S.C. § 5542 for performing certain duties from 1971 through 1978.

2. Whether the district court erred in holding that the OPM formula for determining FLSA overtime entitlements of federal law enforcement officers violated the FLSA.

3. Whether the district court erred in awarding attorneys' fees to appellees under the FLSA (29 U.S.C. § 216(b)) for time expended by appellees' counsel in prosecuting appellees' Title 5 overtime pay claims.

## DISCUSSION

A. Scope of Review

This court reviews a district court's findings of fact under the clearly erroneous

---

**6.** Current OPM guidelines for computing overtime pay for law enforcement employees are consistent with FPM Letter 551–5 and are found at 5 C.F.R. §§ 551.501–.541 (1986).

standard. It reviews a district court's legal conclusions to determine whether they are correct as a matter of law. *Alger v. United States,* 741 F.2d 391, 393 (Fed.Cir.1984); *Heisig v. United States,* 719 F.2d 1153, 1158 (Fed.Cir.1983).

### B. Title 5 Overtime Pay

The Government contends that the district court failed to analyze appellees' claims of entitlement to overtime pay under 5 U.S.C. § 5542 in a manner consistent with precedent binding on this court. It argues that the district court first should have determined whether "OPM properly approved the payment of AUO to plaintiffs," and, if so, whether any of the hours of overtime work performed by appellees were "regularly scheduled." It defines "regularly scheduled" to mean "compliance with criteria in the regulations for procedural regularity," citing *Bennett v. United States,* 4 Cl.Ct. 330, 341 (1984). By this it apparently means that full compliance with the agency's regulatory requirements for scheduling and authorizing overtime must be shown. The Government concedes that if hours of "regularly scheduled" overtime duty are authorized in this manner, appellees would be entitled to overtime pay for those hours under § 5542.

Appellees respond that the district court's analysis was consistent with prior decisions. They maintain that there was no dispute as to OPM's authorization of AUO pay for DUSMs, and that, therefore, the district court properly proceeded immediately to consideration of whether any of the hours of appellees' overtime duty could have been "regularly scheduled." They argue that the district court's specific findings support its conclusion that certain overtime hours worked by appellees were "administratively controllable, regularly occurring, and known in advance to be required," and thus compensable under § 5542.

The Government relies primarily on an order of the Court of Claims, *Bennett v.*

*United States,* 231 Ct.Cl. 1041 (1982), adopting the August 4, 1982 recommended opinion of Trial Judge Harkins (which is published as an appendix to *Bennett v. United States,* 4 Cl.Ct. 330 (1984)). That decision is clearly distinguishable from the case before us. In *Bennett,* the plaintiffs contended that "inclusion of the deputy marshall position in the list of Department of Justice organizations eligible for AUO was invalid under the statutory and regulatory criteria," 4 Ct. Cl. at 337, and "that all their AUO hours should be treated as "regularly scheduled." Appellees here do not contend that they were ineligible for AUO pay in that some of their overtime hours could not have been administratively controlled. Thus, the relevant question, and the one addressed by the district court, was whether any of the appellees' hours of overtime duty could have been "regularly scheduled" or administratively controlled.

In *Bennett* the D.C. Marshals Office was "fairly and equitably" staffed, whereas in the present case the court found a chronic shortage of manpower to be the principal factor accounting for the overwhelming portion of overtime work. This finding led the district court to conclude that certain duties performed by the appellees "could have been administratively controlled by the hiring of additional personnel or the rescheduling of relevant duty hours." [7] In support of that conclusion, the district court found, among other things, that prisoner coordination trips, which constituted almost 50% of the total disputed overtime hours, were almost exclusively reserved for weekends because of the shortage of manpower. It also noted the testimony of the marshal for the district and his supervisory DUSM that had his office been authorized to schedule a two shift day, they would have done so. This rescheduling, in the district court's opinion, "would have eliminated virtually all of the overtime generated through early morning prisoner pick-ups." Finally, the court noted that overtime generated by certain specific categories of appellees' duties

---

7. It is noteworthy that as a regular practice the D.C. office treated some DUSM overtime duties comparable to the duties in the instant case, *e.g.* prisoner transportation and coordination trips

and special assignments, at least in part as regularly scheduled overtime compensable under 5 U.S.C. § 5542. *Bennett,* 4 Cl.Ct. at 336, 344.

(service of process and other court writs and warrants, early morning prisoner pick-ups, prisoner coordination trips, special assignments and "other" work consisting primarily of weekly staff conferences) was "routinely required to be worked and was demanded of the plaintiffs on a constant and on-going basis. Such was therefore 'recurrent.'" The court concluded that these recurrent duties, which did not entail work where "the employee [is] generally responsible for recognizing, without supervision, circumstances which require him to remain on duty," were susceptible of scheduling. See 5 U.S.C. § 5545(c)(2).

We agree with appellees that the Government has not shown the district court's findings on this issue to be clearly erroneous or its conclusions to be incorrect as a matter of law. Furthermore, we discern no conflict with prior Court of Claims decisions cited by the Government. That court granted recovery to meat inspectors in *Aviles v. United States*, 151 Ct.Cl. 1 (1960), because it found that the overtime work at issue, due to its "habitual and recurrent nature," could have been formally scheduled.

In *Burich v. United States*, 366 F.2d 984, 988–89, 177 Ct.Cl. 139 (1966), however, the Court of Claims concluded that a California DUSM's additional duty hours represented AUO hours rather than regularly scheduled overtime. The plaintiff in *Burich*, in contrast to *Aviles* and the present case, experienced "erratic and irregular" periods of overtime. Although his assignments were received on a daily basis, "neither the nature of the work nor the length of time required in its performance could be ascertained beforehand." Thus, in *Burich* it was not contended that these hours were amenable to administrative control by devices such as hiring additional personnel or rescheduling the hours of duty, which the district court held would be effective in the present case in eliminating overtime. 5 C.F.R. § 550.153(a).

Subsequent to *Aviles* and *Burich*, overtime work by nursing assistants at a Veterans Administration Hospital was held by the Court of Claims to be irregular and occasional in *Anderson v. United States*, 201 Ct.Cl. 660 (1973), despite the fact that the work was performed with daily regularity over a three year period. The hospital director in *Anderson*, unlike the supervisors in *Aviles* and in the case before us, had no authority under agency regulations to order or approve regularly scheduled overtime, but only had authority to approve irregular overtime. Despite this limitation on his authority, he nevertheless "tacitly approved" instructions requiring the performance of overtime work on a recurrent basis. *Id.* at 660. The Government argued in *Anderson* that the overtime was "regular" because it was performed every day and that it was, therefore, unauthorized and not compensable. The Court of Claims concluded, however, that equity required "that the natural consequence should be drawn from defendant's failure to schedule the overtime as its own regulation required: it was not regularly scheduled, therefore it was irregular overtime and could be ordered locally." 201 Ct. Cl. at 666.

The Government now cites *Anderson* as establishing that regularly scheduled overtime work is overtime work that is "regularly prescribed according to the statutes and regulations applicable," 201 Ct. Cl. at 665. In a subsequent order in *Anderson*, the court expressly stated that its decision turned on "the wording and context of the particular Veterans Administration regulation.... The court was not construing 'regular overtime work' or 'irregular or occasional overtime work' as those terms [might] appear in other regulations or legislation, or in other contexts." *Anderson v. United States*, 202 Ct.Cl. 1120 (1973) (order denying motion for reconsideration or alteration of the court's judgment). *Anderson*, therefore, is inapposite to the instant case and is not inconsistent with the Court of Claims' earlier decision in the *Aviles* case. For the foregoing reasons, we discern no error in the district court's decision regarding appellees' Title 5 claims.[8]

---

8. Appellees have moved to strike from the

record the Government's request for relief in

## C. Computation of FLSA Overtime Pay

The Government contends the district court erred in holding OPM's formula invalid for violating section 7(k) of the FLSA, 29 U.S.C. § 207(k), "by allowing overtime payments of less than the statutorily mandated rate for non-overtime work." It argues that the district court's decision is contrary to this court's holding in *Zumerling* that OPM properly applied § 7(k) of the FLSA in formulating its equation for the calculation of overtime payments for federal fire fighters and law enforcement officers. Appellees attempt to distinguish *Zumerling* on the basis that it dealt with standby pay under 5 U.S.C. § 5545 (c)(1) and not AUO pay under 5 U.S.C. § 5545(c)(2). Although they acknowledge this court's approval of *Alexander v. United States*, 1 Cl.Ct. 653 (1983), a Claims Court decision dealing with AUO pay which was cited in *Zumerling*, appellees argue that the Claims Court's reliance in the *Alexander* case on FPM Letter 551–5 and Department of Labor regulations found at 29 C.F.R. §§ 778.308 and 778.310 was "inappropriate due to the concise language in [29 C.F.R. §§] 778.202(b) and (d)." These sections state, respectively, that a true overtime premium [is] to be excluded from the "regular rate" and that "extra compensation provided by ... [a premium rate for hours worked in excess of a specified daily or weekly standard] will be regarded as a true overtime premium...."

■ Section 7(e)(5), 29 U.S.C. § 207(e)(5), defines "regular rate" of pay. That section has been interpreted by the Secretary of Labor as excluding overtime compensation in the form of a "premium rate paid for certain hours." 29 C.F.R. §§ 778.-200(a)(5), .201(a). Unlike ordinary overtime compensation, however, AUO premium pay is a flat percentage of the employee's basic pay which remains fixed regardless of the number of AUO hours worked in a particu-

lar pay period. Thus, it is not paid for "certain hours." 29 C.F.R. § 778.310. Furthermore, AUO pay is neither a "fixed amount per hour" nor a "multiple of the non-overtime rate." Thus, it is not paid at any hourly "rate". *Alexander*, 1 Cl Ct. at 657; 29 C.F.R. § 778.308(b); *see Zumerling*, 769 F.2d at 751–52. Since AUO premium pay is neither paid by the hour nor at any hourly rate, we conclude that §§ 778.-202(b) and (d) are inapplicable and that AUO pay does not qualify as an exclusion from the computation of "regular rate."

Although *Zumerling* dealt primarily with standby pay, OPM's formula for determining "regular rate" of pay from which FLSA overtime wages are calculated was "squarely at issue." *Zumerling*, 769 F.2d at 747. This court held that "OPM's administration of the FLSA overtime provisions [was] both reasonable and consistent with the statute, the regulations promulgated by the Secretary of Labor, and the intent of Congress." *Id.* at 749. It also expressed approval of the Claims Court's decision in *Alexander*, which it described as "entirely consistent" with its holding. *Id. Alexander* dealt specifically with AUO pay and held that inclusion of AUO pay received by Customs Service employees in the computation of their "regular rate" was consistent with the requirements of the FLSA. Moreover, one of our predecessor courts, the Court of Claims, held in *Beebe v. United States*, 640 F.2d 1283, 226 Ct.Cl. 308 (1981), that FPM Letter 551–5 was a proper exercise of authority delegated to OPM and that it was proper for an agency to rely on it in implementing the FLSA provisions. *Zumerling*, 769 F.2d at 750. We are bound by the *Zumerling* and *Beebe* decisions and, accordingly, conclude that the district court erred in holding the OPM formula invalid.

## D. Attorneys' Fees

The Government contends that the district court erred as a matter of law in

---

the form of a remand for a determination of specific hours worked by appellees in which they were entitled to be compensated at the regular overtime rate rather than by AUO. The motion is moot in view of the Government's response indicating that it was requesting this relief only in the event we reversed the district

court's decision on appellees' Title 5 claims. In any event, appellees here, unlike those in *Bennett*, established to the satisfaction of the district court that certain categories of their duties could have and should have been formally scheduled, rendering those duties compensable at regular overtime rates under 5 U.S.C. § 5542.

awarding attorneys' fees under the FLSA for time expended by appellees' counsel on appellees' Title 5 claims. Appellees maintain, however, that the court's award of attorneys' fees was based upon findings of fact, not shown to be clearly erroneous, which led the district court to conclude that appellees' FLSA and Title 5 claims were too interrelated to be segregated.

■ The "United States, as sovereign, 'is immune from suit save as it consents to be sued.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Furthermore, the limitations and conditions upon which the Government consents to be sued must be strictly observed. *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). Thus, in order for attorneys' fees to be awarded against the Government, there must be an express statutory authorization providing for the payment of such fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 121 (1975). The FLSA provides such authorization in 29 U.S.C. § 216(b), which states "the court ... shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow reasonable attorneys' fees to be paid by the defendant...." Courts have held that where an employee prevails on a FLSA claim, the award of attorneys' fees under § 216(b) is mandatory. *Beebe v. United States,* 640 F.2d 1283, 226 Ct.Cl. 308 (1981).

■ Although the Supreme Court stated in *Hensley v. Eckerhart,* 461 U.S. 424, 453–54, 103 S.Ct. 1933, 1950, 76 L.Ed.2d 40 (1983), that the "evaluation of the interrelatedness of several claims within a single lawsuit, and of the legal work done on these claims is most appropriately a task for the district court that had and decided the case, and is subject to appellate review for abuse of discretion," that case involved different circumstances. Appellees' Title 5 claims fall outside any express statutory waiver of sovereign immunity contained in the FLSA, whereas all of the claims in *Hensley* fell within an express waiver contained in 42 U.S.C. § 1988.

Section 216(b) of the FLSA does not authorize an award of attorneys' fees for non-FLSA claims. The court's allowance of attorneys' fees for appellees' Title 5 claims as a part of the FLSA award does not represent strict observance of limitations on the Government's waiver of sovereign immunity. We therefore hold that in making a FLSA attorneys' fee award a reasonable allocation must be made to segregate the work performed by appellees' counsel on any successful claims under the FLSA from the work on Title 5 claims.

We note that appellees apparently requested an award of attorneys' fees under both the FLSA and the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (1982). The district court awarded attorneys' fees only under the FLSA provision. Because no issue was raised on appeal as to the propriety of awarding fees under the EAJA, we express no opinion on that issue. In view of our decision, we must remand to the district court to determine the proper FLSA fee award, at which time the appellees may renew their request for EAJA attorneys' fees.

## CONCLUSION

The district court's judgment as to appellees' Title 5 claims is affirmed. Its judgment as to the computation of "regular rate" for determining overtime pay under FLSA is reversed. Finally, the district court's award of attorneys' fees is vacated. The case is remanded to the district court (1) to determine appellees' regular rate for purposes of their FLSA overtime pay entitlement, in view of our holding that the OPM formula is valid and our affirmance of the district court's judgment with respect to overtime work compensable under 5 U.S.C. § 5542 and (2) to determine on the basis of this opinion the proper amount to be awarded to appellees as attorneys' fees.

AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART AND REMANDED.