# United States Court of Appeals for the Federal Circuit

---

**JILLIAN LESKO,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1823

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00715-CNL, Judge Carolyn N. Lerner.

---

Decided:  January 30, 2026

---

DIMITRIOS VASILIOU KOROVILAS, Wucetich & Korovilas LLP, El Segundo, CA, argued for plaintiff-appellant.  Also represented by JASON MATTHEW WUCETICH; MICHAEL S. MORRISON, Alexander Morrison & Fehr LLP, Los Angeles, CA.

MATTHEW JUDE CARHART, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by REGINALD THOMAS BLADES, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before MOORE, *Chief Judge*, CHEN and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Jillian Lesko appeals the decision of the Court of Federal Claims dismissing all five counts in her Amended Complaint for failure to state a claim upon which relief may be granted. Ms. Lesko, who was a registered nurse for the Indian Health Service during the COVID-19 pandemic, alleged she and all similarly situated nurses were denied various pay enhancements for overtime, nighttime, holiday, and Sunday work. In an en banc decision, this court affirmed the Court of Federal Claims' dismissal of Count II and referred the remainder of the appeal back to the panel for resolution. For the reasons discussed below, we now reverse the Court of Federal Claims' dismissal of Counts I and III–V of Ms. Lesko's Amended Complaint and remand for further proceedings consistent with this opinion.

## BACKGROUND

Titles 5 and 38 of the United States Code each govern the hiring, firing, and compensation of federal employees. Title 5 covers compensation and benefits for most General Schedule federal employees while Title 38 governs employment within the Department of Veterans Affairs. Title 38 provides more competitive pay than Title 5, but Title 5 permits the discretionary application of certain provisions from Title 38 to eligible Title 5 healthcare employees. For example, registered nurses employed by the Indian Health Service (IHS)—a division of the Department of Health and Human Services (HHS)—are hired as Title 5 employees, but IHS pays them the higher base rate of pay under the special salary provisions of Title 38. IHS does not, however, apply other compensation provisions from Title 38 that are available to Title 5 employees, including increased compensation rates for overtime, nighttime, Sunday, and holiday work.

From November 2020 through July 2021, Ms. Lesko served as a registered nurse for IHS. According to Ms. Lesko's Amended Complaint, to meet the needs of patients during the COVID-19 pandemic, "nurses were required to work long hours, well over their regularly scheduled tours of dut[y]," and "[t]his additional work was often not paid . . . and occurred at least weekly and often daily." J.A. 82–83 ¶ 43; *see also* J.A. 88 ¶ 61. This "work was not irregular or occasional. Rather, it was and remains continuous, consistent and regularly preformed [sic]." J.A. 82–83 ¶ 43. Twenty-four hours per day, seven days per week, the IHS electronic health record system alerted nurses with patient updates, which "often require[d] immediate responses," or at least "timely" responses pursuant to IHS policies and procedures. J.A. 83–84 ¶¶ 44, 47–48; *see also* J.A. 86–87 ¶ 54. Nurses were also required to submit or respond to patient notes and records within 48 to 72 hours. Supervisors and management were aware of this additional work, but pressured nurses to timely complete tasks, take on more responsibilities, and disciplined nurses if they failed to complete tasks in a timely fashion. This additional work also included nighttime, Sunday, and holiday work. Ms. Lesko filed her original complaint for a class action suit on June 27, 2022, which she amended on November 14, 2022, after the Government filed its first motion to dismiss.

Relevant to this appeal, Ms. Lesko's Amended Complaint included Counts I and III–V and alleged that she and all other similarly situated current and former registered nurses employed by IHS were denied various pay enhancements in violation of (1) 38 U.S.C. § 7453 (miscellaneous compensation benefits); (2) 5 C.F.R. §§ 550.121–22 (nighttime pay); (3) 5 C.F.R. §§ 550.171–72 (Sunday pay); and (4) 5 C.F.R. §§ 550.131–32 (holiday pay). For all claims, she sought backpay under 5 U.S.C. § 5596. The Government moved to dismiss under Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC) for failure

to state a claim, which the Court of Federal Claims granted.

Ms. Lesko appealed the dismissal of each count. The court sua sponte granted en banc hearing on questions related to Count II and the validity of the Office of Personnel Management's (OPM) writing requirement for overtime under 5 U.S.C. § 5542 on March 18, 2025. On December 12, 2025, the court upheld the writing requirement for 5 U.S.C. § 5542 and affirmed the Court of Federal Claims' dismissal of Count II. The court referred the remainder of the appeal back to the panel for resolution.

On December 15, 2025, we ordered party briefing on whether the court's en banc decision impacted the remaining issues on appeal. Both parties filed responsive briefing indicating that the en banc decision did not impact the other counts at issue in Ms. Lesko's appeal. *See* ECF No. 90 at 3 (the Government asserting that "[n]othing in the Court's dismissal of Count II undermines or, as best as we can tell, bears upon any arguments we have made with respect to Counts I or Counts III–V"); ECF No. 91 at 1 (Ms. Lesko asserting that "the claims asserted in the operative complaint related to (1) nighttime pay, Sunday pay, and holiday pay, and (2) entitlement to the Title 38 pay rates associated with these premium pay provisions . . . are wholly independent, and in no way impacted or altered by the en banc Court's ruling").

We thus turn to Counts I and III–V. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

A trial court's dismissal for failure to state a claim presents a question of law that we review de novo. *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1364 (Fed. Cir. 2021). When considering whether to dismiss a plaintiff's complaint, the court must accept all factual allegations in the complaint as true and construe them in the light most

favorable to the plaintiff. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). A complaint should not be dismissed for failure to state a claim unless the complaint fails to state a claim that is plausible on its face. *Id.*

I

In Count I of her Amended Complaint, Ms. Lesko alleged that, just as IHS registered nurses' base pay is provided through Title 38, they should also be awarded the full panoply of higher compensation provided by the other provisions of Title 38 that Title 5 employees are eligible for, including for overtime, nighttime, Sunday, and holiday work.

The Court of Federal Claims dismissed this count, concluding that because OPM "has the authority to cherry-pick Title 38 provisions and apply them piecemeal to Title 5 employees" under 5 U.S.C. § 5371(b), its "subdelegate"—IHS—"enjoys the same discretion." *Lesko v. United States,* 164 Fed. Cl. 663, 667 (2023) (explaining that under Title 5 "[OPM] may apply '1 or more provisions of . . . [T]itle 38'" (second alteration and omission in original) (quoting 5 U.S.C. § 5371(b))). The Court of Federal Claims rejected Ms. Lesko's argument that while OPM can choose to apply certain provisions of Title 38, IHS was not delegated that same authority to selectively choose. The court determined that OPM authorized the HHS Secretary to selectively choose "certain [T]itle 38 provisions," including "premium pay," *id.* (alteration in original) (citing J.A. 101–43 (Am. Compl. Ex. A)), and the HHS Secretary in turn delegated administrative and human resources authority to the Assistant Secretary for Administration, who provides direction and guidance to HHS' Operating Divisions, including IHS, *id.* (citing J.A. 168–74 (Mtn. Dismiss Appx. Ex. 1)). And, the Court of Federal Claims concluded, "[n]othing in the memoranda [cited by the Government] tracing discretion from OPM to, ultimately, IHS cabined or

changed the statutory permission to choose 'one or more' provisions from Title 38 to apply to Title 5 employees." *Id.* The Court of Federal Claims thus dismissed Count I for failure to state a claim because it determined that IHS had the discretion to pick and choose which Title 38 provisions to apply to its employees, and its registered nurses were not entitled to compensation pursuant to provisions IHS did not so choose.

Turning to the pertinent statutory language, 5 U.S.C. § 5371(b) states: "The Office of Personnel Management may, with respect to any employee described in subsection (c), provide that 1 or more provisions of chapter 74 of title 38 shall apply—(1) in lieu of any provision of chapter 51 or 61, subchapter V of chapter 55, or any other provision of this chapter; . . . ." Based on this language, we agree that Title 5 gives OPM statutory authority to selectively apply Title 38 provisions concerning pay rates and systems, hours of work, and premium pay to certain Title 5 healthcare workers outside of the VA, including to IHS registered nurses. OPM has the authority to pick which of these provisions to extend to eligible Title 5 employees, with the Title 38 provision displacing the analogous Title 5 provision, but OPM need not apply all provisions to eligible employees.

OPM may also delegate this authority to other federal agencies. In this case, Ms. Lesko pled that OPM had executed such a delegation agreement with HHS, which she attached to her Amended Complaint as an exhibit, incorporating it therein. *See* J.A. 75–76 ¶ 10; J.A. 101–43. The delegation agreement between OPM and HHS thus became part of Ms. Lesko's pleadings. *See, e.g., McCutchen v. United States*, 14 F.4th 1355, 1363 (Fed. Cir. 2021) (explaining that when analyzing whether to dismiss a complaint, "[w]e may consider 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (citation omitted)).

Ms. Lesko further pled that, pursuant to this delegation agreement, "IHS, a division of HHS, utilizes Title 38 provisions for [registered nurses] . . . . More specifically, Plaintiff and other class members were and/or are employed as [registered nurses] as defined by 38 U.S.C. §§ 7401(1) and 7453 and are hired and compensated pursuant to Title 38 instead of Title 5." J.A. 76 ¶ 13. Ms. Lesko pled that, based on this, she and other IHS registered nurses receive increased rates in their basic pay pursuant to 38 U.S.C. § 7451; however, she alleged that they were "not paid in compliance with the additional pay provisions outlined in [38] U.S.C. § 7453(b)–(e)." J.A. 76–78 ¶¶ 14–23. Ms. Lesko pled that, "[p]ursuant to the OPM's delegation of authority, IHS has specifically hired and categorized Plaintiff and class members as Title 38 employees, yet, IHS has failed to pay them pursuant to the Title 38 increased pay provisions," and IHS has thus "miscalculated all payments provided to Plaintiff and the Class for any and all additional pay earned pursuant to 38 U.S.C. §§ 7453(b)–(e)," including for any overtime, nighttime, Sunday, or holiday work. J.A. 77–78 ¶¶ 23–24; *see also* J.A. 78–80 ¶¶ 25–30.

To support dismissal of Count I, the Government argued below and on appeal that the delegation chain from OPM to HHS continued, with HHS having delegated its authority to pick and choose which provisions of Title 38 to apply to eligible Title 5 employees to IHS. Thus, the Government contends, IHS is free under 5 U.S.C. § 5371(b) to decide whether or not to pay its registered nurses premium pay for any and all additional pay earned pursuant to 38 U.S.C. § 7453(b)–(e). To support this argument, however, the Government relies on a document it attached to its motion to dismiss. *See* Appellee's Br. 11 (citing J.A. 170). And the Court of Federal Claims relied on this document in accepting the Government's argument that the HHS Secretary delegated "administrative and human resources authorit[y]" to Operating Divisions like IHS.

*Lesko*, 164 Fed. Cl. at 667 (alteration in original) (quoting J.A. 170). Indeed, the Court of Federal Claims concluded that "nothing in the memoranda tracing discretion from OPM to, ultimately, IHS cabined or changed the statutory permission to choose 'one or more' provisions from Title 38 to apply to Title 5 employees," leading the court to dismiss Count I. *Id.*

Reliance on a document outside the pleadings was inappropriate at this stage of the proceeding. In considering whether a plaintiff has plausibly stated a claim, a court considers the well-pled facts and documents attached and incorporated into the complaint. *See, e.g.*, *Am. Contractors Indem. Co. v. United States*, 570 F.3d 1373, 1376 (Fed. Cir. 2009) ("On a motion to dismiss, the court generally may not consider materials outside the pleadings."); *McCutchen*, 14 F.4th at 1363. Should the Court of Federal Claims wish to consider evidence outside the pleadings, it must convert the motion to dismiss to a motion for summary judgment. *See Sharifi v. United States*, 987 F.3d 1063, 1067 (Fed. Cir. 2021) ("If, on a motion under RCFC 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under RCFC 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." (quoting RCFC 12(d))). Not only did that conversion not occur in this case, but the court also did not acknowledge that it was relying on evidence outside of Ms. Lesko's pleadings to dismiss her allegations. The Court of Federal Claims was obligated to take all factual allegations in Ms. Lesko's Amended Complaint as true and construe them in the light most favorable to her. In relying on evidence outside of the pleadings—evidence that Ms. Lesko had no opportunity to vet in discovery—the Court of Federal Claims did not do so.

On appeal, both parties focus their arguments on whether HHS did, in fact, further delegate its authority from OPM under 5 U.S.C. § 5371(b) to IHS, centering their

dispute on the language in the government's proffered document. For her part, Ms. Lesko contends that such authority remained with HHS because the document states that the "HHS Deputy Assistant Secretary - Human Resources is delegated '[a]ll authorities relating to administrative responsibilities for human resources' including 'pay and benefits administration.'" Appellant's Br. 22 (alteration in original) (quoting J.A. 168). The Government responds that such authority was delegated to IHS by HHS because the document states that HHS Operating Divisions like IHS were delegated "[a]ll human resources line management authority." Appellee's Br. 11 (alteration in original) (quoting J.A. 170). While both parties present feasible arguments, we note that they do so without the benefit of discovery, which may produce testimony or other evidence that is relevant to resolving this dispute.[1,2]

---

[1] That additional evidence may be relevant to this issue is further supported by both parties' reliance on sources outside of the record in their briefing on appeal.

[2] The Government further contends on appeal that, if Ms. Lesko is correct and IHS was never delegated the authority to apply any provisions of Title 38 to its registered nurses, her allegation is self-defeating because then (1) IHS registered nurses should not have had access to any compensation provisions of Title 38, including for their base pay, and (2) she would no longer have a cause of action under the Tucker Act, as she can only obtain Title 38 benefits through the discretionary application of 5 U.S.C. § 5371. Both arguments are unpersuasive. Ms. Lesko alleged OPM properly delegated authority to HHS to elect which benefits from Title 38 to apply to IHS registered nurses, HHS elected in its discretion to provide those nurses with all available provisions of Title 38, and IHS—without authority to make this election for itself—failed to

We thus reverse the Court of Federal Claims' dismissal of Count I in Ms. Lesko's Amended Complaint.

## II

In Counts III–V of her Amended Complaint, Ms. Lesko alleged that IHS registered nurses were not compensated correctly for work performed at nighttime, on Sundays, and on holidays. The Court of Federal Claims considered these counts together.

The regulations implementing Title 5 premium pay for nighttime, Sunday, and holiday work require that such work be "regularly scheduled." *See* 5 C.F.R. § 550.121; 5 C.F.R. § 550.103. Also relevant is 5 C.F.R. § 610.121(b)(3), which states that:

> If it is determined that the head of an agency should have scheduled a period of work as part of the employee's regularly scheduled administrative workweek and failed to do so . . . , the employee shall be entitled to the payment of premium pay for that period of work as regularly scheduled work under subpart A of part 550 of this chapter. In this regard, it must be determined that the head of the agency: (i) Had knowledge of the specific days and hours of the work requirement in advance of the administrative workweek, and (ii) had the opportunity to determine which employee had to be scheduled, or rescheduled, to meet the specific days and hours of that work requirement.

---

compensate its nurses accordingly. If this is borne out, nothing about it undermines that IHS registered nurses were entitled to the base pay rates of Title 38 or that they would be entitled to backpay for the compensation that the authorized Government agency elected to provide them, but they were not in fact paid.

5 C.F.R. § 610.121(b)(3). This regulation essentially codified our predecessor court's holding in *Aviles v. United States*, 151 Ct. Cl. 1 (1960). *See Pay Administration (General) and Hours of Duty*, 48 Fed. Reg. 3931, 3932 (Jan. 28, 1983) ("[T]he Court of Claims in *Aviles* . . . had previously expressed another principle that: '[T]he mere fact of omitting regular overtime from the scheduled tours of duty does not make such overtime occasional or irregular.' Under the Aviles principle, this overtime work could have been scheduled under the regulations; therefore, it should have been scheduled. . . . OPM concurs and we have included this requirement in § 610.121(b) to fill a gap in the proposed regulations." (second alteration in original) (quoting *Aviles*, 151 Ct. Cl. at 8)).

In *Aviles*, the Court of Claims determined that "tours of duty which the [Agricultural Research Service] regularly scheduled for [meat inspectors] were not 40 hour, five day weeks but weeks consisting of five days each, each day lasting for eight hours *or until the processing plant completed its recurring overtime*." 151 Ct. Cl. at 8. The Court of Claims further determined that the Government "could have formally scheduled workweeks or tours of duty which included the overtime which it knew would be required," but "declined to do so because it feared that payment might have to be made for overtime hours scheduled but not actually worked." *Id.* The Court of Claims reasoned that "it seem[ed] inequitable and unfair . . . for the Government to hold that plaintiffs have not regularly worked the overtime which they were expected to work simply because it chose to adhere to guide lines which have no bearing on the realities of the situation," and that "mere[ly] . . . omitting regular overtime from the scheduled tours of duty does not make such overtime occasional or irregular." *Id.* Thus, the Court of Claims held that where "overtime worked by plaintiffs was part of regularly scheduled tours of duty," they "should be paid the [premium pay] differential for any overtime hours worked." *Id.* at 9.

In *Burich v. United States*, 177 Ct. Cl. 139 (1966), the Court of Claims cabined its holding in *Aviles*. The court emphasized that, unlike the meat inspectors in *Aviles*, the plaintiff in *Burich* experienced "erratic and irregular periods of overtime," as "neither the nature of the work nor the length of time required in its performance could be ascertained beforehand." *Burich*, 177 Ct. Cl. at 145. The Court of Claims thus held that the plaintiff was not entitled to relief because his overtime work was not "amenable to administrative control." *Id.* at 147.

In dismissing Counts III–V of Ms. Lesko's Amended Complaint, the Court of Federal Claims found that, according to Ms. Lesko's pleadings, not only was her work "unscheduled," it "was impossible to schedule in advance." *Lesko*, 164 Fed. Cl. at 670 (citation omitted). The Court of Federal Claims explained that the type of additional work alleged in Ms. Lesko's Amended Complaint is not like the unscheduled work in *Aviles*, which had "followed an 'actual, controllable' pattern." *Id.* at 670–71 (citation omitted). Further, the Court of Federal Claims held that the OPM regulation codifying *Aviles* only "license[d ]retroactively schedul[ing] unscheduled work [if] . . . the agency[ has] 'knowledge of the specific days and hours of the work requirement in advance.'" *Id.* at 671 (quoting 5 C.F.R. § 610.121(b)(3)). Mere "knowledge of recurrent off-the-clock work is insufficient." *Id.* At the motion to dismiss stage, the court must take the allegations in the complaint as true and construe them in the light most favorable to Ms. Lesko. We conclude that the Court of Federal Claims did not follow this standard.

Here, Ms. Lesko pled that IHS registered nurses "regularly and routinely were forced to fill the coverage gaps" in healthcare facilities that were often short staffed, and "[s]upervisors and managers regularly and routinely required nurses to stay after hours and work without compensation." J.A. 82 ¶ 42; *see also* J.A. 86 ¶ 53 ("When Plaintiff and class member shifts were set to end, hospitals

and clinics were often short staffed and unable to meet patient demand[, thus] Plaintiff and class members were often required to stay after tours of duty ended."). Indeed, "nurses were required to work long hours, well over their regularly scheduled tours of dut[y]," and "[t]his additional work was often not paid . . . and occurred at least weekly and often daily." J.A. 82–83 ¶ 43. "This critical and required related patient work was not irregular or occasional. Rather, it was and remains continuous, consistent and regularly preformed [sic] work completed daily and/or weekly." J.A. 82–83 ¶ 43.

Ms. Lesko further pled that IHS uses systems that include individual logins that "track[] and monitor[] the exact time [nurses] are in the system . . . . The IHS is [thus] in possession, custody and/or control of all current and historical time data related to how long Plaintiffs [sic] and class members were utilizing these systems after their tours of duty." J.A. 83 ¶ 45; *see also* J.A. 83 ¶ 44. Additionally, Ms. Lesko pled that nurses transmitted patient related work via fax and email that will "evidenc[e] the time and date such work is completed." J.A. 83 ¶ 46. Ms. Lesko also pled that, twenty-four hours per day, seven days per week, the IHS electronic record system alerted nurses with patient updates, which "often require[d] immediate responses," or at least "timely" responses pursuant to IHS policies and procedures. J.A. 83–84 ¶¶ 44, 47–48. Nurses also needed to respond to certain patient notes and records within 48 to 72 hours. J.A. 84 ¶ 50. And because "[f]ace to face appointments and/or telephone or remote patient interactions take priority," Ms. Lesko pled that "it [was] often impossible to complete all required work and paperwork during normally scheduled tours," despite said paperwork also "often [being] required to be completed within a set number of hours." J.A. 86–87 ¶ 54. Ms. Lesko further pled that supervisors and management were aware of this work, pressured nurses to timely complete tasks and take on more responsibilities, and disciplined them if they failed to

timely complete tasks.  J.A. 84–85 ¶ 51; *see also* J.A. 86–87 ¶ 54 ("Supervisors, managers and other IHS employees have direct knowledge of this off-the-clock work, do not stop Plaintiff and class members from completing these tasks, and in fact directly and/or indirectly require the completion of this necessary work on a regular and ongoing basis.").  Ms. Lesko pled that uncompensated for time also included nighttime, Sunday, and holiday work.  *See* J.A. 87–88, ¶¶ 57–60.

Construing these allegations in the light most favorable to Ms. Lesko, we cannot agree with the Court of Federal Claims' findings that "Ms. Lesko's off-the-clock work was impossible to schedule in advance"; that "IHS could not have 'formally scheduled workweeks . . . which included the overtime . . . it knew would be required,'" as "much of the additional work revolved around 'patient emergencies' 'at any time'"; that Ms. Lesko "does not allege that her off-the-clock work followed an 'actual, controllable' pattern"; and that "[n]othing in [the] Amended Complaint suggests her additional work could be formally scheduled."  *Lesko*, 164 Fed. Cl. at 670–71 (omissions in original) (citations omitted).  With discovery it may turn out that certain of this alleged uncompensated for work—like having to respond to patient emergencies—is indeed not of a "habitual and recurrent nature," such that it followed an "actual, controllable" pattern.  However, Ms. Lesko pled that the additional work "occurred at least weekly and often daily"; "was not irregular or occasional," but in fact was "continuous, consistent and regularly preformed [sic]"; was trackable by IHS with such data remaining in the agency's custody and control; and was related to more than just patient emergencies or alerts and notifications, but also included routine paperwork and instances when hospitals and clinics were short staffed such that nurses had to remain on shift after their scheduled tour ended.  Construing Ms. Lesko's pleadings in the light most favorable to her, she states a plausible claim that IHS registered nurses were "called

upon regularly to perform night[, Sunday, and holiday] work and that, by virtue of its habitual and recurrent nature, such work could have and indeed should have been formally scheduled," *Burich*, 177 Ct. Cl. at 147, as part of their "regularly scheduled" tours of duty.    5 C.F.R. § 550.103.  Having thus cleared the bar of plausibly stating a claim at the motion to dismiss stage, whether IHS registered nurses' nighttime, Sunday, and holiday work was such that it could have been "regularly scheduled" is an issue for resolution on the facts.

On appeal, the Government argues that Ms. Lesko has "implicitly" admitted that her claims for uncompensated work at nighttime, on Sundays, and on holidays were not so consistent that the precise hours were known in advance and should have been part of her regular schedule.  Appellee's Br. 16, 19.[3]  The Government further contends that Ms. Lesko's pleadings "suggest[] . . . *ad hoc* work that the agency could not have predicted with such specificity." Appellee's Br. 19.  We are not persuaded.  First, it is not clear to us that Ms. Lesko conceded that all alleged nighttime, Sunday, and holiday work was irregular such that authorized personnel would not have "[h]ad knowledge of the specific days and hours of the work requirement in advance of the administrative workweek."   5 C.F.R. § 610.121(b)(3). The Government only relies on Ms. Lesko's statement that "the law does not require such precision," to support its proposition, which falls short of a concession.  Appellee's

---

[3]    The Government also seems to imply that *Aviles* is no longer good law because it "was decided before OPM promulgated th[e] regulatory language" in 5 C.F.R. § 610.121(b)(3).  Appellee's Br. 18.  But the Government also concedes that this regulation codified *Aviles* and goes on to cite positively the Court of Federal Claims' use of *Aviles* and *Burich*. Appellee's Br. 18–19.  This argument is thus both underdeveloped and unpersuasive.

Br. 19 (quoting Appellant's Br. 18). Furthermore, Ms. Lesko, as part of her argument that the Court of Federal Claims erred by not allowing her to further amend her complaint, asserted that she could more specifically allege that such work should have been scheduled by someone with authority to do so, *see* Appellant's Br. 24, further supporting that she was not making any such concession in her opening brief.

Second, as we have already noted, construing all well-pled facts in the light most favorable to her, Ms. Lesko's pleadings include more than just emergency or *ad hoc* work, instead she alleged that uncompensated, routine tasks and work "was not irregular or occasional." J.A. 82–83 ¶ 43. She also alleged that much of this work was trackable, with IHS possessing the data.

We thus reverse the Court of Federal Claims' dismissal of Counts III–V in Ms. Lesko's Amended Complaint.

### III

Ms. Lesko alternatively argues that the Court of Federal Claims abused its discretion by dismissing her Amended Complaint instead of granting her leave to amend to more specifically allege that IHS registered nurses' overtime work could have and should have been scheduled and to further allege facts and claims related to the recovery of basic pay. In her responsive briefing to the panel order following the court's en banc decision, Ms. Lesko argued that, related to Count II, the Court of Federal Claims should have given her leave to amend to assert claims for straight time pay for off the clock work that does not derive from Title 5. ECF No. 91 at 4–5. However, Ms. Lesko never moved to amend her complaint a second time in front of the Court of Federal Claims, and instead only requested leave to amend as an alternative form of relief incorporated into her response to the Government's motion to dismiss. A trial court does not abuse its discretion by not allowing a party to amend a complaint

where the party fails to move to amend.  *See, e.g.*, *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913–14 (8th Cir. 2002); *see also Refaei v. United States*, 725 F. App'x 945, 951–52 (Fed. Cir. 2018) (nonprecedential) (citing *Meehan* approvingly).

## CONCLUSION

We have considered the Government's remaining arguments and find them unpersuasive.  For the foregoing reasons, we reverse the decision of the Court of Federal Claims dismissing Counts I and III–V of Ms. Lesko's Amended Complaint and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

## COSTS

Costs to Appellant.